# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:18-CR-708 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANT'S MOTION** |
| KENNETH TYSON, | ) | **TO COMPEL PRODUCTION** |
| | ) | **AND REQUEST FOR HEARING** |
| Defendant. | ) | |

Defendant Kenneth Tyson hereby moves the Court, pursuant to Federal Rule of Criminal Procedure ("Rule") 16(d)(2), for an order requiring the government to produce all documents and other information responsive to Mr. Tyson's discovery requests identified below.  Mr. Tyson first made the vast majority of these requests in January 2019 and has renewed them repeatedly—via *four* follow-up letters—since.

But the government largely has failed to provide responsive discovery.  Indeed, in many instances, it has not responded to the requests in *any* meaningful fashion, even refusing to inform Mr. Tyson whether it ever intends to produce responsive discovery and, if not, the precise reasons for its refusal.  In other instances, it has directly and stubbornly refused to produce basic, essential information routinely produced in other cases, including, for example, the names of the individuals identified only by initials in the indictment.  And in still other instances, where the government *has* finally produced documents responsive to Mr. Tyson's repeated requests that it comply with its discovery obligations, those supplemental productions have not only been incomplete but have also confirmed Mr. Tyson's concern that the government is unjustifiably and inexplicably

withholding and, in the best circumstances, slow-walking the production of highly relevant and properly discoverable information.

Indeed, the prosecution's conduct in this matter to date indicates that it has lost sight of the fact that this is a *criminal* case in which it represents the government of the United States and accordingly has a *duty* to facilitate the fair and just prosecution and resolution of this case, not a *right* to pursue conviction at all costs regardless of the facts and of Mr. Tyson's right to discovery. In light of the government's stonewalling, the materiality of this information to his defense, and thus his entitlement to it under Rule 16(a)(1)(E) and judicial precedent, Mr. Tyson reluctantly, but of necessity, files this motion.

I.      BACKGROUND

Mr. Tyson previously worked as a "Property Specialist" for the Cuyahoga County Land Bank (the "Land Bank").  Indictment, ECF No. 1, ¶ 1.  The Land Bank, among other things, contracts with demolition companies to demolish distressed properties.  *Id.* ¶¶ 2, 4.  Companies apply to be included on the list of bidders for these contracts.  Once these applications have been reviewed and have received preliminary approval, property specialists (like Mr. Tyson used to be) visit the companies to make sure what checked out on paper also checks out in person.  *See id.* ¶ 8. Subsequent to these site visits, a Land Bank *supervisor* then decides whether to add the applying company to the list of approved bidders for demolition contracts.

This criminal case centers on allegations that Mr. Tyson "assisted and arranged" for a demolition company—RCI Services ("RCI")—to be placed on the Land Bank's approved-bidders list for demolition contracts.  *Id.* ¶ 25(c).  Based on the uncorroborated statements of a cooperator, the government alleges that Mr. Tyson, in some yet-unidentified way, "assisted and arranged" for RCI to be added to the list because RCI's operator, one "M.R.," allegedly arranged to have a water

line fixed and a tree cut at a property owned by Mr. Tyson. *Id.* ¶¶ 23–31. The government also alleges that M.R. arranged to have concrete repaired at Mr. Tyson's property. *Id.* ¶ 52. The government has made a federal case out of this alleged conduct because the Land Bank allegedly "received more than $10,000 from the United States government . . . , more specifically from the United Stated Department of Housing and Urban Development Neighborhood Stabilization Funds," *id.* ¶ 3, and because three emails regarding the bidding process, sent from Cleveland to local recipients, allegedly pinged off a server in Arizona, *id.* ¶ 55. It has thus charged Mr. Tyson with bribery concerning programs receiving federal funds, wire fraud, and conspiracy.

Indicted in late November 2018, Mr. Tyson requested a number of specific items and categories of discovery from the government via letter on January 7, 2019. *See* Ex. A, Jan. 7, 2019 Letter. While the government responded to some of the requests, producing documents in three batches during the month of February 2019, it ignored the majority of them. Accordingly, counsel sent a follow-up letter to the government on February 22, 2019, noting that the government had "not yet complied with several discovery requests from" the January 7, 2019 letter and requesting that the government provide, with respect to "each request made in that letter, [its] position on whether [it] has fully complied, is in the process of complying [with the requests] and the anticipated timeline for production," or whether the government did "not intend to comply." Ex. B, Feb. 22, 2019 Letter, at 1. The government sent no response.

Counsel therefore sent another follow-up letter on April 4, 2019, again requesting responses regarding the missing discovery and, this time, detailing the categories of discovery to which the government had failed to respond either adequately or at all. Ex. C, Apr. 4, 2019 Letter. For example, this letter highlighted, among other issues, the government's limited and strangely selective production of government's cooperator's AT&T phone records. Though Mr. Tyson,

naturally, had requested a complete record—which would have constituted 1,708 pages—the government produced only 76 pages, 4.4% of what was requested.  That is, rather than producing the records in their original form as kept in the course of business and as obtained by the government, the government instead plucked out pages it deemed relevant.  In response to this letter, the government finally produced the complete phone record.  Troublingly, a review of the additional pages yielded exculpatory information material to the defense—information previously withheld by the government in defiance of Mr. Tyson's request and the rules of discovery.

Following a subsequent set of email exchanges in which the government promised a substantive response but did not receive one, counsel sent a *third* follow-up letter that "renew[ed] [the] request for production of all evidence in the Government's possession and collected pursuant to subpoena or otherwise."  Ex. D, Apr. 23, 2019 Letter, at 2.  This April 23, 2019 letter reiterated counsel's request for "full production of records responsive to our discovery requests" and, like the April 4, 2019 letter, specifically identified seven categories of documents from the original January 7, 2019 letter to which the government had not yet responded.  *Id.* at 2-3.  Those categories included:

   (1) complete files of any audits of the Land Bank conducted by any governmental entity and related to funds the Land Bank received through the Troubled Asset Relief Program ("TARP");

   (2) the complete files of any audits of the Land Bank conducted by any governmental entity and related to non-TARP funds received by the Land Bank from a governmental entity;

   (3) a detailed description of the procedures and mechanisms by which the Land Bank received Neighborhood Stabilization Funds;

   (4) all Land Bank budget, financial report, internal-control, and similar documents;

   (5) identity of all witnesses and other sources of information ("SOIs") related to Mr. Tyson's alleged crimes and copies of all communications between any SOI and prosecutors or law enforcement;

(6) financial records for cooperating witnesses and other SOIs; and

(7) the full names of those listed only by initials in Mr. Tyson's indictment.

*Id.* at 3.  In mid-February, counsel had learned that the government previously obtained a warrant authorizing the search of a phone number belonging to a "confidential human source" ("CHS"), whom the defense believes to be the "M.R." referenced in the indictment.  The affidavit in support of the warrant application stated that "a telephone analysis conducted by law enforcement revealed 270 calls and text messages between Tyson and CHS."  Warrant Affidavit ¶14[1].  Accordingly, in both the April 4 and April 23 letters, counsel also requested a copy of the referenced analysis and basic information regarding, *e.g.*, who conducted the analysis, the analytical method used, and all information used in conducting the analysis and reaching the above conclusion.  Ex. D, Apr. 23, 2019 Letter, at 3.  Counsel also sought access to any physical phone searched as part of the purported analysis.  *Id.*

The government did not respond in any way to the April 23, 2019 letter.  Counsel accordingly sent yet another follow-up letter to the government on May 8, 2019.  This letter, the fifth overall, again requested production of, or at least *some* response regarding, the seven categories of discovery discussed in the April 23, 2019 letter and also reiterated the request for discovery regarding the telephone analysis.  Ex. E, May 8, 2019 Letter, at 3-4.  Also, in the May 8, 2019 letter, counsel highlighted the fact that "the Government's case depends entirely upon the uncorroborated accusations of . . . cooperator [M.R.]."  *Id.* at 1.  Accordingly, counsel reaffirmed requests from the original January 2019 letter that the government produce materials related to M.R.  Specifically, the letter reiterated requests for seven types of witness-specific materials, including (1) case file(s) related to "any criminal, civil, administrative, or regulatory investigation"

---

[1] See ECF No. 20.  Document filed under seal.

of M.R. or any of his businesses by "any local, state, [or] federal" entity; (2) cooperation agreements and related materials for M.R. or his businesses; (3) tax and other financial documents for M.R. or his businesses; (4) all statements made by M.R. orally, in writing, or otherwise; (5) medical records related to M.R.'s memory, mental state, or head trauma; (6) M.R.'s criminal history reports and related data; and (7) all prior drafts and iterations of, as well as communication regarding, the document produced in discovery titled "UPDATED Affidavit KT SW APP-final 10.18.18(a).pdf" (*i.e.*, the affidavit regarding the search of M.R.'s mobile phone records). *Id.* at 2. In light of the government's continued refusal to engage, counsel requested that the government respond within one week—by May 15, 2019—and noted that while counsel "would like to resolve these discovery issues, continued delay will require court intervention." *Id.* at 4.

Once again, the government stonewalled. Ultimately, on June 14, 2019, the government responded to counsel's May 8 letter. Ex. F, Gov't June 14, 2019 Letter. But the response was surprisingly opaque and unhelpful, particularly considering that it took the government *four months* to develop it. With one limited exception, the government refused to produce documents responsive to *any* of Mr. Tyson's specific outstanding requests that had been variously reiterated in the April 4, April 23, and May 8 letters. Further, the government in large part refused to state with any specificity *why* it was refusing Mr. Tyson's requests or even whether responsive documents existed. "Either the Defendant is not entitled to the document under Rule 16 or the document requested is not in the possession of the prosecution team," the government says in response to one request. *Id.* at 1. And in response to the next: "Either the requested document does not exist, or it will be provided with the government's *Jencks* production." *Id.*

In late September 2019, nearly ten months after the Indictment and only three months before the then-in-effect trial date, the government informed defense counsel that it would produce

an additional 320 GB of information ("Additional Discovery").  The Additional Discovery appears to consist—entirely or primarily—of records produced to the government by the Land Bank *at the end of 2018*.

Given the extraordinary delays caused by the government, its refusal to produce entire categories of material documents, its refusal to produce documents in a timely fashion, and its use of boilerplate responses-in-the-alternative to avoid even stating, in comprehensible form, the grounds for its refusals, Mr. Tyson seeks this Court's intervention.

## II.    LEGAL STANDARD

"[W]hen defense counsel makes a timely request for discovery, the government must furnish the information, unless it believes there are grounds for a protective order or the material is not within the scope of the applicable rule."  *United States v. Mentz*, 840 F.2d 315, 328 (6th Cir. 1988).  Rule 16(a)(1)(E), which applies here, requires the government to provide all requested discovery to a defendant where the requested "item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant."

"'[T]he disclosure required by Rule 16 is much broader than that required by the due process standards of *Brady*.'"  *United States v. Skeddle*, 176 F.R.D. 258, 259-260 (N.D. Ohio 1997) (quoting *United States v. Conder*, 423 F.2d 904, 911 (6th Cir. 1970)).  "[E]vidence that is material to . . . prepar[ing] . . . the . . . defense," and thus subject to production under Rule 16(a)(1)(E)(i), "has been broadly construed" to mean "documents for which there is a strong indication that they will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment and rebuttal."  *United States v. Halpin*, 145

F.R.D. 447, 450 (N.D. Ohio 1992) (citation and internal quotation marks omitted). *See also United States v. Poulsen*, 568 F. Supp. 2d 885, 924 (S.D. Ohio 2008) ("[i]nformation is material under Rule 16" if it falls into any of these categories); *United States v. Lloyd*, 992 F.2d 348, 351 (D.D.C. 1993) (same; also stating that the Rule 16 "materiality standard normally is not a heavy burden" (quotation marks omitted)).

If the government refuses to produce documents in response to a Rule 16(a)(1)(E) request, the defendant, to obtain production over the government's objection, need only make a *prima facie* showing that the sought-after documents are material. *E.g., United States v. Clingman*, 521 F. App'x 386, 392 (6th Cir. 2013). The Sixth Circuit "has not authoritatively defined materiality under Rule 16." *United States v. Clingman*, 521 F. App'x 386, 392 (6th Cir. 2013). But it is well settled that a defendant has met his materiality burden when he makes a *prima facie* showing of a mere "indication" that the sought-after information will "counter the government's case or bolster a defense." *Id.* (citations and quotation marks omitted). Further, "Rule 16 is intended to prescribe the *minimum* amount of discovery to which the parties are entitled, and leaves intact a court's discretion to grant or deny the broader discovery requests of a criminal defendant." *United States v. Richards*, 659 F.3d 527, 543 (6th Cir. 2011) (emphasis added).

## III.    ARGUMENT

Here, the discovery Mr. Tyson has requested is material under these standards and thus must be produced pursuant to Rule 16. But the government has refused production and, even more surprisingly, has refused to clearly state its reasons for refusal, all in contravention of, or at least inconsonant with, its obligation under *Mentz*: "[W]hen defense counsel makes a timely request for discovery, the government must furnish the information, unless it believes there are grounds for a protective order or the material is not within the scope of the applicable rule." *Id.* at 328.

Further, to the extent precise grounds for the government's refusals can be teased from its cryptic June 14, 2019 letter, the government's reasons for withholding production are legally inadequate.

A.    The Government Must Produce the Requested Documents Regarding M.R.

As stated in the May 8, 2019 letter, based on defense counsel's investigation to date, "it is clear that the Government's case depends entirely upon the uncorroborated accusations of [M.R.]." Ex. E, May 8, 2019 Letter, at 1.  The government has not contradicted this observation. Accordingly, any information the government has with respect to M.R. that could lead to admissible evidence, provide potential impeachment of M.R., or confirm testimony of Mr. Tyson or any witness contradicting M.R. is material and must be produced.  *See supra* at 8.  Mr. Tyson has, as stated, requested M.R. discovery in seven categories: (1) case file(s) related to "any criminal, civil, administrative, or regulatory investigation" of M.R. or any of his businesses by "any local, state, [or] federal" entity; (2) cooperation agreements and related materials for M.R. or his businesses; (3) tax and other financial documents for M.R. or his businesses; (4) all statements made by M.R. orally, in writing, or otherwise; (5) medical records related to M.R.'s memory, mental state, or head trauma; (6) M.R.'s criminal history reports and related data; and (7) all prior drafts and iterations of, as well as communication regarding, the document produced in discovery titled "UPDATED Affidavit KT SW APP-final 10.18.18(a).pdf" (affidavit regarding M.R.'s mobile phone records).  Ex. E, May 8, 2019 Letter, at 2.

All of these categories are material.  Mr. Tyson has already discovered that M.R. spent time in prison, has gone by a number of different aliases, and ran another company responsible for illegal dumping and a landfill fire that triggered highly publicized state and federal investigations. And it appears this is only the tip of the iceberg.  All seven categories of discovery will almost certainly yield information providing additional reasons to question M.R.'s reliability and

truthfulness, an issue essential to Mr. Tyson's defense.  As such, all of this information must be produced.

In its June 14, 2019 letter, the government indicated that it would refuse to produce documents responsive to any of the seven categories.  It dangled the *possibility* of later producing responsive documents in three of the seven categories as Jencks material but refused in absolute terms to ever make a production with respect to the other four.

### 1.   The Government's Jencks and "Existence" Objections Are Misguided.

With respect to the three potential government applied Jencks categories—(2) cooperation agreements and related materials for M.R. or his businesses; (4) all statements made by M.R. orally, in writing, or otherwise; and (6) M.R.'s criminal history reports and related data—the government responds, "Either the requested [document or statement] does not exist or it will be provided with the government's *Jencks* [sic] production."  Ex. F, Gov't June 14, 2019 Letter, at 1-2.  For starters, this either/or construction is improper.  The government knows full well whether or not there are extant documents in these three categories, and refusing, after many months of requests, to even acknowledge the existence (or not) of documents only serves to vex and delay, squandering the resources of both the Court and Mr. Tyson.  Additionally, assuming documents in all three categories do exist (they almost assuredly do—yet more evidence that the government's "if they exist" response is disingenuous and vexatious), the government overreached in its position that the Jencks Act applies to all three categories of information sought.[2]  The Act only addresses the timing of production of "statement[s] or report[s]" *made by*—not *about*—"a Government

---

[2] Furthermore, to the extent requested documents once existed, but for any reason, no longer do exist, Mr. Tyson asks this Court to require the government to explain what specifically those documents were, what they stated, why they no longer exist, and at what point in time they ceased to exist.

witness or prospective Government witness."  18 U.S.C. § 3500(a).  It thus, by its own terms, does not apply to categories (2) and (6):  respectively, cooperation agreements and related materials for M.R. or his businesses; and M.R.'s criminal history reports and related data.  Those categories of documents should be produced immediately.

As to category (4)—all statements made by M.R. orally, in writing, or otherwise—such statements are indeed governed by the Jencks Act.  *See* Fed. R. Crim. P. 16(a)(2) ("statements made by prospective government witnesses" need not be produced until required by the Jencks Act).  Mr. Tyson has previously acknowledged this fact in his correspondence to the government.  Ex. A, Jan. 7, 2019 Letter, at 5.  But "[w]hile technically the government may withhold Jencks material" until after M.R. has testified, the Sixth Circuit made clear over 25 years ago that "the better practice—and that followed in most federal courts today—is for the government to produce such material well in advance of trial."  *United States v. Minsky*, 963 F.2d 870, 876 (6th Cir. 1992).  The government should seek to restore faith in the manner in which it will conduct itself in the discovery process by providing this material now.

> 2.     The Government's Production Obligations Extend Well Beyond the "Prosecution Team."

Regarding the other four categories of M.R.-related materials that the government refuses to produce, the government raises the in-the-alternative issue of existence with respect to three (categories 3, 5, and 7).  It is improper here for the reasons just stated above.  Also, with respect to three of these remaining four (categories 1, 3, 5), the government refuses to produce on the alternative ground that the responsive documents *may* not be "in the possession of the prosecution team."  Ex. F, Gov't June 14, 2019 Letter, at 1-2.  But the government does not provide any information that would allow Mr. Tyson to assess this position on the merits.  That is, in addition

11

to refusing to state whether the documents exist or not, it also refuses to define the term "prosecution team."

With respect to this particular shortcoming, Mr. Tyson is concerned that the government is hiding behind this undefined term to avoid producing documents held by other government entities involved with the investigation but not technically part of the "prosecution team" as self-interestedly envisioned by the government. But the government's duty to produce under Rule 16 is not limited to documents that are in the possession of either the individual AUSAs prosecuting this case or the U.S. Attorney's Office. Rule 16(a)(1)(E) requires the government to produce all information material to the defense that is "within the *government's* possession, custody, or control." (Emphasis added.) The "government," of course, is not limited merely to the local U.S. Attorney's Office. Rather, Mr. Tyson contends that the words of Rule 16(a)(1)(E) should be permitted to retain their plain meaning: Government means the government writ large, and, accordingly, the prosecutor's office should have an obligation to produce all responsive documents within the "possession, custody, or control" of the government. Indeed, this view is in accord with the publicly available Northern District of Ohio United States Attorney's own Discovery Policy, which acknowledges that "[m]embers of the prosecution team include federal, state, and local law enforcements officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant." Discovery Plan, Office of the United States Attorney, Northern District of Ohio, October 15, 2010.[3]

Mr. Tyson recognizes, however, that some courts have defined "government" for purposes of Rule 16(a)(1)(E) more narrowly. But even under this narrower definition, the government is

---

[3]     https://www.justice.gov/sites/default/files/usao/pages/attachments/2015/04/01/ohn_discovery_policy.pdf

still obligated to produce responsive documents "within the . . . possession, custody, or control" of, *e.g.*, the Department of Housing and Urban Development's Office of Inspector General ("HUD-OIG"), the Office of the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP") or the FBI here.  In *United States v. Skaggs*, 327 F.R.D. 165 (S.D. Ohio 2018), for example, the district court determined that the prosecutor did not have an obligation to conduct a government-wide search for responsive material.  Nevertheless, the prosecution *was* "deemed to have knowledge of and access to material that is in the possession of any federal agency that participated in the investigation that led to [the] defendant's indictment, or that . . . otherwise cooperated with the prosecution."  *See also, e.g.*, *United States v. Nallani*, No. 11-20365, 2015 U.S. Dist. LEXIS 9563, at *6-7 (E.D. Mich. Jan. 28, 2015) (noting that "the Sixth Circuit has not defined the term 'government'" in the Rule 16(a)(1)(E) context but endorsing a definition that includes any agencies that "participated in the prosecution or investigation"); *Smith v. Sec'y of New Mexico Dep't of Corr.*, 50 F.3d 801, 824 (10th Cir. 1995) (in *Brady* context, disclosure duty extends to material possessed by "law enforcement personnel and other arms of the state involved in" the investigation).

Here—based on the limited discovery provided to date—it appears Mr. Tyson did not become a formal investigation "target" until 2018.  But the broader investigation of M.R., which ostensibly led to the government deeming Mr. Tyson a target, was already underway well before that date.  State, local, and federal agencies had been investigating M.R., his businesses, and other members of RCI since at least 2017.  For example, and as reported by several media outlets, a search warrant was executed at M.R.'s business offices by what appears to be local, state, and

federal agencies on November 2, 2017.[4]  And it is this very investigation of M.R. and his business interests that led to Mr. Tyson's prosecution.  Mr. Tyson is thus entitled to discovery of all requested documents created, obtained, or controlled by any government agency involved in the broader investigation.

Both HUD-OIG and SIGTARP, for example, have been intimately involved in the investigation (though the government has attempted to conceal and minimize the fact of their involvement).  Thus, the government is obligated to produce responsive documents within the possession, custody, or control of these agencies and any others involved with the case or broader investigation.  Likewise, any information or evidence gathered by the federal EPA or any other federal agency, including the FBI or the IRS, as part of the broader investigation of M.R. and/or his landfill business must be produced, as those investigations precipitated this case.  Similarly, any evidence obtained from the Ohio EPA, Ohio Attorney General, or other state or local agency as part of these investigations must also be produced.  *See, e.g.*, *United States v. Fort*, 472 F.3d 1106, 1118 (9th Cir. 2007) ("state-gathered evidence becomes subject to the disclosure obligation established by Rule 16(a)(1)(E) when it passes into federal possession"); Discovery Plan, Office of the United Stated Attorney, Northern District of Ohio, October 15, 2010, quoted *supra* at 10.

Yet despite its clear obligations, the government not only has failed to produce as required documents in the possession, custody, or control of other government agencies (for example, it has produced *nothing* related to the November 2017 raid on M.R.'s offices, discussed above), it has even refused prompt production of responsive documents under its own control.  Again, by way of example, though they had seemingly been in the government's possession for at least two years,

---

[4]    https://www.news5cleveland.com/news/local-news/oh-cuyahoga/authorities-raid-east-cleveland-building-in-connection-to-troubled-arco-recycling-site

the government only recently provided RCI bank records[5] that had been printed *two years ago*—on April 26, 2017.  And the government similarly held back until only recently bank records for the listed owner[6] of RCI that had been provided to the government on May 31, 2017.

The government's recalcitrance must come to an end; it should be ordered to produce immediately all responsive documents—regardless of the government entity that holds them—pertaining to the broader investigation of M.R., RCI, related entities, and/or Mr. Tyson.[7]

3.  The Government's Generalized "Rule 16" Objections Are Likewise Inapt.

With respect to two of the seven categories of M.R.-related material Mr. Tyson has requested, the government asserts—again in the alternative—one or more of the boilerplate objections already discussed while also asserting that "the Defendant is not entitled to the document under Rule 16."  Ex. F, Gov't June 14, 2019 Letter, at 1-2.  It asserts this objection with respect to categories 1 and 3—(1) case file(s) related to "any criminal, civil, administrative, or regulatory investigation" of M.R. or any of his businesses by "any local, state, [or] federal" entity, and (3) tax and other financial documents for M.R. or his businesses.  But this objection is deeply misguided.  Case files pertaining to M.R. as well as tax and other financial records go to the heart

---

[5] Although Mr. Tyson was indicted for allegedly taking actions to financially benefit RCI, these bank records, received June 14, 2019, reflect the first financial statements of RCI to be turned over in discovery.  And even these are woefully incomplete:  In a prior disclosure, the government provided a single check from an RCI account.  Records for that account were *not* provided as part of the June 14 production.

[6] Though it appears M.R. controlled RCI, part of his scheme to conceal his interest in the company involved recruiting another individual to serve as the registered owner.

[7] Additionally, the government appears to be on a prosecutorial campaign against demolition contractors associated with the Land Bank—the very entity Mr. Tyson is alleged to have defrauded.  For example, two such contractors, Martin Fano (1:19-CR-79) and Eric Witherspoon (1:18-CR-701), have both recently pled guilty to corruption-related charges.  Mr. Tyson is entitled to any exculpatory evidence gathered in those cases or investigations.  The defense has no alternative means of obtaining these materials.

of the case, both for impeachment purposes and because a key element of the government's allegations pertains to payments made by M.R.  *See, e.g.*, *Halpin*, 145 F.R.D. at 450 (Rule 16(a)(1)(E) requires production where there is a strong indication the information sought "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment and rebuttal").  The government "must" produce all information "material to preparing the defense."  Fed. R. Crim. P. 16(a)(1)(E).

B.    The Government Must Likewise Produce Documents Related to Other Potential Witnesses and Sources of Information.

Mr. Tyson believes, and the government has yet to contradict, that the prosecution's case is entirely reliant on M.R.  But it is a near certainty that the government will ultimately assert otherwise, whether at trial or before.  Accordingly, certain basic information regarding other potential witnesses and sources of information is material—indeed, critical—to Mr. Tyson's defense for both impeachment and corroborative purposes.  In this vein, Mr. Tyson continues to seek responses to three requests targeted to these other individuals:

(1) identity of all witnesses and other sources of information ("SOIs") related to Mr. Tyson's alleged crimes and copies of all communications between any SOI and prosecutors or law enforcement;

(2) financial records for cooperating witnesses and other SOIs; and

(3) the full names of those listed only by initials in Mr. Tyson's indictment.

*Supra* at 5; Ex. D, Apr. 23, 2019 Letter, at 2-3; Ex. E, May 8, 2019 Letter, at 3.

In its June 14, 2019 letter, the government refused to provide any discovery with respect to (1), stating the now-familiar alternative boilerplate grounds that "Either the Defendant is not entitled to the information . . . under Rule 16 or it will be provided with the government's *Jencks* [sic] production."  Ex. F, Govt's June 14, 2019 Letter, at 3.  But the government once again gives no explanation as to *why* Mr. Tyson is not entitled to this information, *i.e.*, how it could be that the

16

identity of the government's witnesses and other sources of information would *not* be material to the defense.  In reality, of course, such information is essential to understanding the scope of the government's evidence and investigation and thereby developing an appropriate response thereto. As to the government's other objection, the Jencks Act, as discussed, governs the production of "statement[s] or report[s]" "made by" government witnesses or prospective witnesses.  18 U.S.C. § 3500(a).  It has nothing to say about the identification of those witnesses or of SOIs.

Regarding the second request—for witness and SOI financial records—counsel, in corresponding with the government, acknowledged the government's prior production of such records related to three entity SOIs but requested production with respect to all other SOIs as well, including eleven specifically identified in its request.  In response, the government did produce financial records for *three* of the eleven individuals.  Additionally, the government had previously produced certain bank records for Drain Guru (the company that allegedly installed the water line at the house Mr. Tyson owned).  But it revealed in its June 14, 2019 letter that the prior production was only a partial one: While it had previously produced five months of bank records, it had inexplicably held back additional Drain Guru bank records spanning a *three-year* period.  Ex. F, Gov't June 14, 2019 Letter, at 4.  The government gave no explanation for this piecemeal approach to discovery.

Most importantly, the government refused to produce financial records related to the eight other specifically identified SOIs (or any others), stating that either the records did not exist, were not "in the possession of the prosecution team," or were not discoverable under Rule 16.  In so doing, the government again refused even to identify which of these alternatives applied to which specific SOIs.  By continuing in its evasion, the government has created needless additional work for the Court and Mr. Tyson.  If indeed the government (not just the "prosecution team") does not

have any financial records for certain of the SOIs, it should simply say so; its hide-the-ball tactics inhibit Mr. Tyson's ability to proffer concise, cogent arguments regarding each of the SOIs.  As such, with respect to this request, Mr. Tyson asks that, as an initial step, the Court order the government to identify the SOIs for which the government (*i.e.*, the agencies and other government entities involved in any way in the investigation or prosecution of this matter or of M.R. or RCI) does *not* have any financial records.

The government's stonewalling regarding the third listed request—for the names of the ten individuals identified in the indictment by initials only—is particularly egregious.  This is information of the most basic sort and is at the government's immediate disposal.  Moreover, the identity of the individuals who allegedly participated in the events supposedly constituting criminal activity by Mr. Tyson is fundamental to his defense.  Four of the undisclosed individuals, for example, allegedly installed the at-issue water line, Indictment, ECF No. 1, ¶ 30, while another conducted the at-issue concrete repair, *id.* ¶ 51.  The identity of individuals who are the source of the government's factual narrative is essential to the preparation of Mr. Tyson's defense.  Refusal to provide the information is impermissible.  *See, e.g.*, *United States v. Buck*, No. 10-20350, 2011 U.S. Dist. LEXIS 61116, at *2 (E.D. Mich. June 8, 2011) (government provided in discovery names of persons identified only by initials in indictment); *United States v. Coleman*, No. 07-CR-233, 2010 U.S. Dist. LEXIS 148374, at *21 (N.D. Ga. Feb. 24, 2010) (granting motion to compel production of full names of individuals identified only by initials in indictment).

Nevertheless, the government refuses to grant the defense the courtesy of responding even to this request, instead remarking that "[a]s evidenced by" Mr. Tyson's request for financial records regarding eleven specific SOIs, "either the Defendant already has knowledge of this information or it will be provided with the government's *Jencks* [sic] production."  If that list of

18

eleven SOIs exhaustively and correctly identifies the individuals named only by initials in the indictment, the government should just simply say so.  A substantive response would have taken no more time—but would have shown much more good faith—than simply implying, without stating in a way that could actually be relied upon, that the individuals identified by Mr. Tyson were indeed those referred to in the indictment.  Likewise, as previously discussed, the Jencks Act does not govern the timing of witness or other SOI *identification*.  There is in short no legitimate reason for the government to continue refusing to respond to this request.

> C.  The Government Must Produce Documents Related to the Land Bank's Finances and Alleged Receipt of Federal Funds.

As discussed above, Mr. Tyson has been charged with violation of 18 U.S.C. § 666, "bribery concerning programs receiving Federal funds."  A conviction under this statute requires proof that the "organization" at issue—here, the Land Bank—received, in one year's time, "benefits in excess of $10,000 under a Federal program" meeting certain conditions.  18 U.S.C. § 666(b).  Proof of this element therefore must necessarily be part of the government's case-in-chief.   Rebuttal or explanation of the same will thus be essential for Mr. Tyson's defense.  Accordingly, Mr. Tyson has made three categories of requests for documents related to the Land Bank's receipt and use of government funds.  Once again, those categories are:

> (1) complete files of any audits of the Land Bank conducted by any governmental entity and related to funds the Land Bank received through the Troubled Asset Relief Program ("TARP");
>
> (2) the complete files of any audits of the Land Bank conducted by any governmental entity and related to non-TARP funds received by the Land Bank from a governmental entity;
>
> (4) all Land Bank budget, financial report, internal-control, and similar documents.

*Supra* at 4-5; Ex. D, Apr. 23, 2019 Letter, at 2; Ex. E, May 8, 2019 Letter, at 2.

The materiality of this discovery is thus clear on the face of the requests.  It appears the government agrees.  In an April 8, 2019 email, the government stated that it had "asked the [presumably SIGTARP, FBI, & HUD-OIG] agents to again review their files and verify if they ha[d]" any information responsive to these four requests. Ex. G, Email Exchange, at 1.  "My initial impression," the prosecutor said, "is that [the agents] do not [have responsive material], but we have asked them to check again and will respond to you as soon as I hear back from the agents this week." *Id.*

The government never responded "th[at] week" as promised.  Ultimately, in its June 14, 2019 Letter, the government refused to provide discovery with respect to any of the three requests, asserting that the sought-after evidence "either . . . does not exist or . . . is not in the possession of the prosecution team."  Ex. F, Gov't June 14, 2019 Letter, at 3.  Plainly from these objections and the previous email exchange with the prosecutor, the government views its discovery obligations with respect to these requests as limited only to an inquiry directed to the prosecutors and agents personally involved in this case.  That is, the government's "objection" here is based not on materiality but rather on the scope of the internal search for documents the government must conduct.

But as already discussed in detail, *supra* at 12-14, the government's obligation extends well beyond simply searching the files of specific agents involved with the case or of the narrowly defined "prosecution team."  As previously pointed out to the government via email, at the very least, Land Bank audits conducted by, and Land Bank financial records in possession of, *e.g.*, HUD-OIG, SIGTARP, or the FBI must be produced.  *Id.*

D.  The Government Must Produce Discovery Related to the Telephone Analysis.

Mr. Tyson's request for information regarding the telephone analysis that was in large part the basis for the search warrant mentioned above, *supra* at 5, must be honored.  Specifically, Mr. Tyson seeks a copy of the telephone analysis itself as well as access to the phone that was analyzed and identification of who conducted the analysis and the analytical procedures employed.  Ex. D, Apr. 23, 2019 Letter, at 3.  These materials are essential to Mr. Tyson's inquiry into the legitimacy of the search warrant and thus are plainly material to his defense and discoverable pursuant to Rule 16(a)(1)(E) & (F).[8]

The government, via its June 14, 2019 letter, did not mention Mr. Tyson's requests for access to the phone that was analyzed and for information regarding who conducted the analysis and the analytical procedures employed.  This is presumably an indication that the government has no colorable basis on which to object to these aspects of the request.  The government must therefore produce this information forthwith.

The government did address the telephone analysis itself, however, refusing to produce a copy based solely on the assertion that it constitutes "work product."  Ex. F, Gov't June 14, 2019 Letter, at 4.  But this assertion is misguided.  The government made the strategic decision to cite the telephone analysis in the affidavit submitted in support of its application for the search warrant. The affidavit asserts that the warrant is necessary in part because "[a] telephone analysis conducted by law enforcement revealed over 270 telephone calls and text messages between TYSON and CHS from January 1, 2014 to the present."  Warrant Aff., ¶ 14[9].  The government thus placed the

---

[8] Subparagraph (F) provides that "the government must permit a defendant to inspect and to copy the results or reports of any . . . scientific test if . . . the item is material to preparing the defense" and certain other conditions, present here, are met.

[9] *Supra* at 5, fn. 1

21

analysis at issue not only by referencing it, but by disclosing, under oath, its content in hopes of bolstering its position before the court.  In so doing, it unequivocally waived any work-product protection that might have otherwise applied.  *See, e.g.*, *United States v. Nobles*, 422 U.S. 225, 239 (1975) (defendant waived work-product protection of investigator's report where defendant called investigator to testify regarding report contents); *Harding v. Dana Transp.*, 914 F. Supp. 1084, 1099 (D.N.J. 1996) (corporate defendant waived work-product protection with respect to internal report where defendant used fact of investigation as a defense); *New Phoenix Sunrise Corp. v. Comm'r*, 408 F. App'x 908, 918 (6th Cir. 2010) (work-product protection is waived by voluntary disclosure in a federal proceeding).  Accordingly, the telephone records and analysis must be produced.

E.  The Government must produce any and all internal communications, reports, case files, and *ex parte* filings related to alleged conflict.

Finally, as the Court well knows, in multiple filings filed under seal and even *ex parte*, the government has urged the Court to disqualify Mr. Tyson's lead counsel, Chris Georgalis, due to an alleged conflict of interest.  Given the government's extraordinary conduct in this regard, and this Court's thoughtful rejection of the government's position, the defense moves this Court to require the government to produce any and all documents and information having to do with the conflict allegation, including internal communications, notes, case files—whether purged, partially purged, or unpurged—and the like.[10]

True, Federal Rule of Criminal Procedure Rule 16(a)(2) exempts from discovery "reports, memoranda, or other internal government documents made by an attorney for the government . . .

---

[10] In light of the government's conduct, the defense, in its original discovery request, sought internal communications, notes, reports, memoranda, or other governmental documents related to Mr. Tyson's interactions with the government, and more generally as it pertained to the investigation as a whole.

in connection with investigating or prosecuting the case."  But documents related to the government's attempt to disqualify opposing counsel pertain neither to the investigation nor prosecution of the alleged underlying criminal conduct.  Moreover, even if this were not the case, "the Federal Rules of Criminal Procedure are not the sole arbiter of a court's authority" to order discovery in a criminal matter.  *United States v. Germain,* 411 F. Supp. 719, 725 (S.D. Ohio 1975).  Discovery in addition to that provided for by the Rules may be ordered "where [the] need is readily apparent to the Court."*Id.*  Mr. Tyson submits that, in light of the government's extraordinary conduct and attempt to deprive him of his constitutional rights, such additional discovery is warranted in this case.

Specifically, in pursuing disqualification, the government defaulted on its duty to conduct a fair and judicious prosecution, exchanging those obligations for gamesmanship aimed at depriving Mr. Tyson of his Sixth Amendment right to his counsel of choice.  That right "commands . . . that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best."  *United States v. Gonzalez-Lopez,* 548 U.S. 140, 146 (2006).  But here, the government did its level best to deprive Mr. Tyson of that right.  And, moreover, though the government's decision to file certain documents *ex parte* has prevented Mr. Tyson and his counsel from understanding the government's position in full, this Court's forceful rejection of the government's attempts to effect this deprivation is further indication of potential malfeasance on the government's part.  Indeed, the Supreme Court has specifically recognized the importance of preventing "the Government" from doing precisely what it did here—"seek[ing] to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side."  *See Wheat v. United States*, 486 U.S. 153, 163 (1988).

Taken collectively, *Wheat*, *Gonzalez-Lopez*, and *Germain* encourage courts to invoke their supervisory power to allow for additional discovery when unfair tactics may be at play. A district court may order the government to produce discovery information beyond what is required on the case of the Federal Rules of Criminal Procedure. See, e.g., *United States v. Battisti*, 486 F.2d 961, 965 (6th Cir. 1973) (ordering the government's production of prospective witness list as well as criminal history of prospective witnesses); *United States v. Moceri*, 359 F. Supp. 431 (N.D. Ohio 1973) (ordering the government's production of prospective witness list as well as criminal history of prospective witnesses.) Mr. Tyson asks the Court to invoke that power here for the purpose of getting to the bottom of the government's conduct. The defense submits that such an inquiry is necessary to protect the integrity of the adversarial system and Mr. Tyson's due process rights. "[D]istrict courts have broad inherent powers to manage discovery." *United States v. Louisiana*, No. CIV.A. 11-470, 2012 WL 832295, at *2 (M.D. La. Mar. 9, 2012). "[T]he court has 'inherent power' to compel discovery in criminal cases." *United States v. Nolte*, 39 F.R.D. 359, 361 (N.D. Cal. 1965). Furthermore, "[t]he inherent power to sanction bad faith conduct must extend to reach individuals and conduct not directly addressed by other mechanisms . . . [and t]he power of a court over members of its bar is at least as great as its authority over litigants." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993) (internal citations and punctuation omitted). The Court should exercise its inherent authority to compel disclosure here.

Additionally, even if this Court does not order broad discovery regarding the government's disqualification-related machinations, certain materials still must be produced. First, all of the government's *ex parte* filings and communications with respect to disqualification must be provided to Mr. Tyson. *In re Paradyne Corp.*, 803 F.2d 604 (11th Cir. 1986), is directly on point. In that criminal case, the government moved to disqualify defense counsel, alleging conflicts of

interest.  In addition to its motion, the government made an *ex parte* presentation to the district court.  The defendants brought a mandamus action in the court of appeals, requesting that the trial court be required to release the transcript of the government's *ex parte* presentation.  *Id.* at 612.  The court of appeals granted the mandamus petition, holding that "due process require[d]" that the defendants be granted access to the transcript.  *Id.*  In so doing, the court reasoned that "*ex parte* conferences . . . should occur but rarely, especially in criminal cases" and that disclosure of the *ex parte* disqualification material was necessary "to ameliorate any unfair advantage—or the appearance thereof—"to the government.  *Id.* (internal quotation marks omitted).  The same logic applies—and thus the same result should obtain—here.

Second, the Court has stated that if the government has *Brady* and *Giglio* material related to its conflict investigation, then the government must turn those materials over to the defense.  Order, ECF No. 50, at Page ID # 456.  In light of the government's extraordinary and clandestine behavior in this matter, it should be ordered to turn over *all Brady* and *Giglio* information related to the disqualification issue immediately.

## IV.  CONCLUSION

For all of these reasons, Defendant Kenneth Tyson respectfully asks this Court to compel production of the above-requested discovery, namely:

1. Cooperation agreements and related materials for M.R. or his businesses;

2. All statements made by M.R. orally, in writing, or otherwise;

3. M.R.'s criminal history reports and related data;

4. All tax-related documents and filings, or lack thereof, IRS/DOJ Tax generated reports or memoranda, loan documents, financial information, credit history, bank records and financial statements, and/or bankruptcy filings regarding M.R. and is businesses;

5. All medical records that reflect upon M.R.'s memory, mental state, or head trauma;

6. All prior drafts and iterations of, as well as all communications regarding, the document produced in discovery titled "UPDATED Affidavit_KT SW APP-final 10.18.18(1).pdf;

7. The complete files—including but not limited to all reports, correspondence, other communications (including emails), notes, and working papers—of all audits of the Cuyahoga County Land Reutilization Corporation (hereinafter, the "Land Bank") Land Bank related to funds received through the Troubled Asset Relief Program (hereinafter, "TARP") conducted by the U.S. Department of Housing and Urban Development (hereinafter, "HUD"), the Office of the Special Inspector General for the Troubled Asset Relief Program (hereinafter, "SIGTARP"), the Ohio State Auditor, and/or any other State or federal agency;

8. The complete files—including but not limited to all reports, correspondence, other communications (including emails), notes, and working papers—of all audits of the Land Bank related to funds received from other (non-TARP) City, County, State, or federal programs, whether conducted by HUD, SIGTARP, the Ohio State Auditor, or another State or federal agency;

9. Any and all budget documents, accounting books, interim and annual financial reports, policy and training documents, and internal-control procedures of the Land Bank;

10. The identity of any and all sources of information (hereinafter, "SOI") that are or were key witnesses or part of the prosecution team, or who played an active role in the events underlying Defendant's alleged criminal liability, and any written communications between prosecutors and law-enforcement agents and any such SOI;

11. Any and all financial records for cooperating witnesses or SOIs, including but not limited to bank statements, checks, and invoices.  We have received financial records from On Call Plumbing, Drain Guru, CLB Services, partial production from Latasha Atteberry, and partial production from RCI Services.  But we have not received financial records for any other parties, including Michael Riley, additional records from Latasha Atteberry and RCI Services, Mike Smedley, Joe Mazzola, Chrissy Beynon, Jason Strzala, Chris Lurz, John Pappas, Ralph Cruz, and Trapp Masonry & Concrete (beyond a screenshot of a check that is essentially illegible);

12. The full names of all individuals listed in the Indictment by initials only;

13. Paragraph 14 of the Affidavit avers that law-enforcement conducted a telephone analysis that revealed over 270 telephone calls and text messages between Mr. Tyson and the CHS between January 1, 2014–October 2018.  We are requesting this analysis, including who conducted the analysis, access to the phone that was analyzed, the procedures for the analysis, and any other information used to form the basis of Paragraph 14, not just what the Government deems "relevant" to disclosure.  This information falls squarely within Rule 16 and has notably been absent from discovery production; and

14. Material related to the government's investigation related to Attorney Georgalis' alleged conflict, including internal communications, reports, case files, and all *ex parte* filings.

In addition, Mr. Tyson asks that the Court schedule a hearing on this motion.

Dated:  October 23, 2019

Respectfully submitted,

/s/ Chris Georgalis
Chris Georgalis (OH:  0079433)
Edward Fadel (OH: 0085351)
Flannery │ Georgalis, LLC
1375 E. 9th St., Suite 2810
Cleveland, OH 44114
Telephone: (216) 367-2095
Email: chris@flannerygeorgalis.com
        edward@flannerygeorgalis.com

*Attorneys for Defendant Kenneth Tyson*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2019, this Motion to Compel Production and Request for Hearing was filed with the via the Court's ECF system.  Counsel of record will receive notice of, and be able to access, the filing via the ECF system.


   /s/Chris Georgalis
Chris Georgalis

*An Attorney for Defendant Kenneth Tyson*