# Flannery | Georgalis, LLC
### Attorneys at Law

www.flannerygeorgalis.com

Christos N. Georgalis
Office:  216-367-2095
Mobile: 216-374-1890
chris@flannerygeorgalis.com

January 7, 2019

*BY EMAIL AND REGULAR U.S. MAIL*

Carmen Henderson & Chelsea Rice
Assistant United States Attorneys
Office of the U.S. Attorney – Cleveland
Suite 400
801 Superior Ave., W.
Cleveland, OH 44113
Carmen.Henderson@usdoj.gov
Chelsea.Rice@usdoj.gov

Re: *United States v. Kenneth Tyson*, **1:18-CR-708**

Dear Ms. Henderson and Ms. Rice:

As you know, we represent Kenneth Tyson (hereinafter, "Defendant") in the above-referenced case. On behalf of Defendant, we request that the United States of America, by and through the Office of the U.S. Attorney, produce the following items, to the extent they may exist, for Defendant's inspection and use in connection with the preparation, and/or trial, and/or sentencing in this case:

1. **All information discoverable pursuant to Federal Rule of Criminal Procedure 16;**

2. **The substance of any and all relevant oral statements made by Defendant to a known Government agent;**

3. **Any and all relevant written or recorded statements by the Defendant—whether those statements were made to Government agents or third parties—that are within the Government possession, custody, or control;**

4. **All notes, memoranda, summaries, or communications made by any Government agent during or about any interrogation or interview of Defendant, including all handwritten notes from which computer reports or notes were prepared;**

---

**Flannery | Georgalis, LLC**
One Cleveland Center
1375 E. 9th Street, 30th Floor
Cleveland, Ohio 44114

Frank R. Recker, DDS & Associates Co., L.P.A.
Of Counsel
One W. 4th Street, Suite 2606
Cincinnati, Ohio 45202

**Carmen Henderson and Chelsea Rice**
**Assistant U.S. Attorneys**
**January 7, 2019**
**Page 2 of 6**

The Government may, but need not, produce "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case," *unless* those items are otherwise discoverable—whether under Federal Rule of Procedure 16(a)(1)(A)–(D) or (F), the *Brady/Giglio* lines of cases, the Jencks Act, or otherwise—in which case the item must be produced.

There are a number of reasons that might require that an internal document be disclosed. For example, if an agent made notes during an interrogation or interview of Defendant that contains the substance of Defendant's oral statements, those notes are discoverable under Rule 16. If that same agent communicates with an attorney for the Government about that statement via email, and the email contains the substance of Defendant's oral statements or *Brady* material, that email (or the portion containing the oral statement) is discoverable under Rule 16. All notes, communications, and other written statements made by testifying witnesses will be discoverable under the Jencks Act.

Notes and communications that contain *Brady* information are also discoverable. For example, if Defendant made statements that a Government attorney or agent initially considered to be false, but which were later determined to be true (or possibly true), notes and communications regarding that determination are material *Brady* information.

5. The complete files—including but not limited to all reports, correspondence, other communications (including emails), notes, and working papers—of all audits of the Cuyahoga County Land Reutilization Corporation (hereinafter, the "Land Bank") related to funds received through the Troubled Asset Relief Program (hereinafter, "TARP") conducted by the U.S. Department of Housing and Urban Development (hereinafter, "HUD"), the Office of the Special Inspector General for the Troubled Asset Relief Program (hereinafter, "SIGTARP"), the Ohio State Auditor, and/or any other State or federal agency;

6. The complete files—including but not limited to all reports, correspondence, other communications (including emails), notes, and working papers—of all audits of the Land Bank related to funds received from other (non-TARP) City, County, State, or federal programs, whether conducted by HUD, SIGTARP, the Ohio State Auditor, or another State or federal agency;

7. A detailed description of the procedures and mechanisms through which the Land Bank allegedly received HUD Neighborhood Stabilization Funds ("NSP2 funds") between January 2013 and January 2014;

**Carmen Henderson and Chelsea Rice**
**Assistant U.S. Attorneys**
**January 7, 2019**
**Page 3 of 6**

    8.    Any and all budget documents, accounting books, interim and annual financial reports, policy and training documents, and internal-control procedures of the Land Bank;

This request includes, but is not limited to, any and all current or past policies, procedures, and training materials used by the Land Bank in connection with the solicitations, applications, and selections of demolition contractors and the bidding, awarding, and auditing of demolition contracts and payments for demolition contracts.

    9.    The identity of any and all sources of information (hereinafter, "SOI") that are or were key witnesses or part of the prosecution team, or who played an active role in the events underlying Defendant's alleged criminal liability, and any written communications between prosecutors and law-enforcement agents and any such SOI;

This request is consistent with law, including Federal Rule of Criminal Procedure 16(a)(1)(E)(i). Any claim of a so-called "informer's privilege" gives way to a defendant's need to know an informant's identity when the informant's identity is "relevant and helpful to the defense of an accused" or "essential to a fair determination of a cause." *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957). Courts require disclosure when an informant is more than a mere tipster, but serves as a key witness or an active participant in the events underlying the defendant's potential criminal liability, such that the informant can give relevant testimony or provide material information helpful to the defense. *See, e.g.*, *United States v. Lloyd*, 400 F.2d 414, 416 (6th Cir. 1968); *United States v. Sharp*, 778 F.2d 1182, 1186 n.2 (6th Cir. 1985); *United States v. McManus*, 560 F.2d 747, 751 (6th Cir. 1977), *cert. denied*, 434 U.S. 1047 (1978).

    10.    Any and all financial records for cooperating witnesses or SOIs, including but not limited to bank statements, checks, and invoices;

    11.    The full names of all individuals listed in the Indictment by initials only;

    12.    The search warrant(s), if any, used to search any physical or electronic location or account, and the results[1] of those searches, if any;

    13.    The search warrant packet(s), including any and all affidavits, drafts of affidavits, and emails regarding said affidavits, used to obtain any such search warrants;

    14.    Any and all grand-jury subpoenas or other requests for documents or information issued during this investigation, and the results returned pursuant to those subpoenas/requests;

---

[1] Please provide the results of all searches, subpoenas, and other requests in the format in which the results were originally obtained.

**Carmen Henderson and Chelsea Rice**
**Assistant U.S. Attorneys**
**January 7, 2019**
**Page 4 of 6**

In any significant criminal investigation, a number of documents and other items gathered by investigators may be deemed not relevant. We want to make clear that this request—and all of the requests in this letter—include any and all responsive information, whether or not that information has been deemed relevant by investigators.

15. **All evidence favorable to Defendant that is material either to the issue of guilt or punishment in this case or that serves to impeach a Government witness who will testify at trial, including evidence that could materially affect Defendant's conception of the Government's case prior to potential plea negotiations.** *See generally Brady v. Maryland*, **373 U.S. 83 (1963),** *Giglio v. United States*, **405 U.S. 150 (1972), and the Department of Justice policies and procedures related to disclosure under those lines of cases;**

We request that, in complying with this request and these obligations, the Government affirmatively and diligently seek out information in its possession and the possession of its agents—including HUD, SIGTARP, the Federal Bureau of Investigation (hereinafter, "FBI"),[2] and other entities outside of the Department of Justice—that tends to negate the guilt of Defendant, to mitigate the offense charged, to impeach the Government's witnesses or evidence, or to reduce the likely punishment of Defendant if he is convicted. Moreover, we request that the Government diligently advise the other governmental entities involved, including but not limited to FBI, HUD, and SIGTARP, of their own continuing duty to identify, preserve, and disclose such information to you as the prosecutor. *See* ABA Crim. J. Standard, Prosecution Function 3-5.4 (4th ed.) ("The prosecutor should diligently advise other governmental agencies involved in the case of [this] continuing duty . . . .").

As you might expect, we have already spoken to a number of people who have knowledge of the relevant events and parties in this matter. From those conversations, we expect that there should be a significant amount of *Brady* material within the notes and communications of the special agents involved in the investigation of this matter. For instance, if, during an interview, a witness reported that the agents misunderstood the internal procedures of the Land Bank or misunderstood Defendant's role or authority, such that it would actually not be possible for Defendant to have done what the agents suspected, that would be *Brady* material that must be disclosed. To the extent that there is no such *Brady* material already documented, we respectfully request that you work with the agents to ensure that all such material is properly documented.

These requests are consistent with the Due Process Clause of the Fourteenth Amendment—as interpreted by *Brady v. Maryland* and its progeny—and widely accepted prosecution best

---

[2] It is our understanding that the FBI has been part of the prosecution team for this matter, as indicated by, at a minimum, the presence of at least two FBI special agents at the arraignment. Therefore, we specifically note that our requests—including that the Government make diligent efforts to seek out *Brady/Giglio* and other discoverable materials—apply equally to the FBI.

Carmen Henderson and Chelsea Rice
Assistant U.S. Attorneys
January 7, 2019
Page 5 of 6

practices, which require the Government to affirmatively seek out and disclose material exculpatory information. *See, e.g.*, *Jamison v. Collins*, 291 F.3d 380, 387 (6th Cir. 2002) ("*Brady* . . . has been interpreted to impose an affirmative duty to evaluate evidence and provide exculpatory evidence to the defense."); ABA Crim. J. Standard, Prosecution Function 3-5.4 (4th ed.) ("The prosecutor should diligently seek to identify all [such] information in the possession of the prosecution or its agents . . . ."). These requests are also consistent with prosecutors' ethical duties and best practices, as well as Supreme Court guidance, which urge prosecutors to aggressively seek out and disclose even non-material information that tends to negate the guilt of the accused or mitigate the offense. *See, e.g.*, Ohio R. Prof. Conduct 3.8(d); ABA Model R. Prof. Conduct 3.8(d) ("The prosecutor in a criminal case shall: . . . make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense . . . ."); *Cone v. Bell*, 556 U.S. 449, 469–70 & n.15 ("As we have often observed, the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure."); ABA Crim. J. Standard, Prosecution Function 3-5.4 (4th ed.) ("[A] prosecutor should make timely disclosure to the defense of [this] information . . . regardless of whether the prosecutor believes it is likely to change the result of the proceeding . . . .").

16. **All material pursuant to 35 U.S.C. § 3500, otherwise known as Jencks Act Material, including by not limited to, all handwritten notes, drafts, memoranda, reports, texts, emails, chats, or otherwise;**

While we are aware that the Government has the right to withhold Jencks Act Material until its witness has testified on direct, we are requesting that the Government provide all Jencks Act Material early in order to avoid unnecessary trial delay. *See, e.g.*, *United States v. Minsky*, 963 F.2d 870, 876 (6th Cir. 1992) ("While technically the government may withhold Jencks Act material . . ., the better practice—and that followed in most federal courts today—is for the government to produce such material well in advance of trial . . . .")

17. **All summaries of any testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial;**

18. **The general nature of any and all evidence that the Government intends to introduce at trial pursuant to Federal Rule of Evidence 404(b);**

19. **Any and all evidence that the Government intends to introduce at trial pursuant to Federal Rule of Evidence 414;**

20. **All summaries, charts, or calculations that the Government intends to use at trial, pursuant to Federal Rule of Evidence 1006;**

If the Government is not ready to make these materials available at this time, we request that the materials be made available for defense inspection and comparison with the underlying documents at least 14 days prior to trial, which has been held to be a reasonable time balancing

**Carmen Henderson and Chelsea Rice**
**Assistant U.S. Attorneys**
**January 7, 2019**
**Page 6 of 6**

the competing needs of the prosecution and defense. *United States v. Pickel*, No. 2:07-CR-21, 2007 WL 1452908 at *2 (E.D. Tenn. May 17, 2007).

21. **The Government's proposed U.S. Sentencing Guidelines calculation in this case;**

22. **Any additional information discoverable under the policies and procedures of the Department of Justice, Offices of the U.S. Attorney, or Office of the U.S. Attorney for the Northern District of Ohio, including broader disclosures than are required under legal discovery obligations.**

*See, e.g.*, Memorandum for Department Prosecutors from Deputy Attorney General David W. Ogden (Jan. 4, 2010) ("Prosecutors are also encouraged to provide discovery broader and more comprehensive than the discovery obligations. . . . Providing broad and early discovery often promotes the truth-seeking mission of the Department and fosters a speedy resolution of many cases. It also provides a margin of error in case the prosecutor's good faith determination of the scope of appropriate discovery is in error.")

— — —

Defendant requests that the Government comply with the above requests or inform Defendant of the Government's intent not to comply as soon as possible, so that Defendant will be able to effectively prepare his defense.

Please note that Defendant specifically requests all items he is entitled to be provided by the U.S. Constitution, the laws of the United States, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, the U.S. Sentencing Guidelines and/or existing case law. If those sources require production of items not specifically requested herein, a request for these items is now specifically made. Furthermore, this request is a continuing request; if the Government discovers additional evidence or material responsive to the above requests subsequent to the Government's initial production, the Government shall promptly and without delay provide Defendant with the additional evidence or material. *See* Fed. R. Crim. P. 16(c).

If you have any questions, kindly let us know.

Very truly yours,

Chris N. Georgalis
Edward Fadel
Kevin J. Vogel