IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:18CR708 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | <u>FILED UNDER SEAL</u> |
| | ) | |
| KENNETH TYSON, | ) | <u>RESPONSE IN OPPOSITION TO</u> |
| | ) | <u>DEFENDANT'S MOTION TO DISMISS</u> |
| Defendant. | ) | |

The United States of America, by and through the undersigned counsel, hereby files this response in opposition to Defendant Kenneth Tyson's Motion to Dismiss (Doc. 100: Tyson's Mot. to Dismiss, PageID 1043).  For the foregoing reasons, the government respectfully submits that this motion should be denied.

**I.  BACKGROUND**

Tyson is charged with Conspiracy to Commit Bribery and Honest Services Fraud, 18 U.S.C. § 371 (Count 1), Honest Services Wire Fraud ("HSWF"), 18 U.S.C. §§ 1343, 1346, and 2 (Counts 2, 3, and 4), and Bribery (Count 5).  The nine-page Indictment alleges, in detail, that Tyson, a Property Specialist with the Cuyahoga County Land Reutilization Corporation ("CCLRC"), M.S., M.R., and others, engaged in a conspiracy to commit honest services fraud and bribery, when Tyson solicited and accepted bribes from M.R. (in the form of home repair and contractor services valued at approximately $6,700) in exchange for Tyson arranging to have M.R. added to the CCLRC qualified demolition contractor list.  Being added to the CCLRC qualified demolition contractor list allowed M.R. to bid on and be awarded CCLRC demolition jobs, including a demolition job valued at approximately $32,355.  The Indictment further

alleges that Tyson caused three specific wire communications to be transmitted for the purpose of executing his scheme and also committed the substantive offense of bribery.

## II.    ARGUMENT

### A.  Legal Standard

In order to survive dismissal, "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *accord United States v. Hudson*, 491 F.3d 590, 592-93 (6th Cir. 2007).  Rule 7 imposes "modest requirements," and an indictment is generally deemed sufficient if it tracks the language of the statute.  *Hudson*, 491 F.3d at 593-94 (quoting *Hamling*, 418 U.S. at 117); *see also United States v. Horton*, 580 F. App'x 380, 383 (6th Cir. 2014).  Additionally, the indictment must also assert facts which constitute an offense and, if proven, would establish prima facie the defendant's commission of that crime.  *United States v. Maney*, 226 F.3d 660, 663 (6th Cir. 2000).

### B.  Tyson's baseless allegations that some false evidence was presented to the grand jury are not a sufficient basis to dismiss the indictment.

As an initial matter, pursuant to Federal Rule of Criminal Procedure 6(e), the grand jury is a secretive process, and disclosure of protected material "may be punished as a contempt of court."  *Id.*; *see also Douglas Oil Co. v. Petro Stops Nw*, 441 U.S. 211, 218-19 (1979).  Only when a "compelling necessity" has been "shown with particularity" will courts allow the secrecy of the grand jury to be invaded.  *See United States v. Proctor and Gamble Co.*, 356 U.S. 677, 681 (1958).

2

Tyson cannot make such a particularized showing by simply assuming that the facts recited in one witness's affidavit earlier in the investigation were the same facts another witness later submitted to the grand jury.  That is especially so when, as here, the earlier affidavit was submitted to obtain more evidence and advance investigators' knowledge of the facts before submitting the case to the grand jury.  Tyson bases his assumption on the search warrant affidavit of Special Agent Robert Heiss. As discussed in the government's response to Tyson's Motion for Disclosure of Grand Jury Transcripts and Materials, (Doc. 86: Govt.'s Resp. in Opp., PageID 895), Agent Heiss did not testify before the grand jury.  Therefore, Agent Heiss' affidavit is irrelevant to whether sufficient evidence to sustain an indictment was presented to the grand jury. In both his grand jury motion and the present motion to dismiss, Tyson improperly interchanges the search warrant affidavit and what was presented to the grand jury.  As discussed below in more detail, the search warrant affidavit and indictment are not one in the same.  As a result of the search warrant affidavit, the government received additional records to assist in its investigation, which informed the grand jury testimony that was the basis for the indictment.  For these reasons and others, Tyson fails to demonstrate that false testimony was presented to the grand jury.[1]

### 1. RCI was not put on the list of contractors for the Land Bank and invited to bid on jobs until after M.R. completed work at Tyson's residence.

Tyson's first allegation is that false testimony was presented to the grand jury regarding when M.R. had contact with the Land Bank.  Tyson incorrectly states that in the affidavit ███████

---

[1] Although review the matters presented to the grand jury are not necessary to dispose of Tyson's claims, the government offers the grand jury transcripts to the court to review *in camera* if the Court would find such review helpful at this stage.



████████████████████████████████████████████████████████████

████████████████████████ (Doc. 100: Def.'s Mot. to Dismiss, PageID 1046).  The

government is confused about the basis for Tyson's allegation that ████████████████

████████████ The affidavit does not include any such statement. Rather, the affidavit

accurately notes that ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████ Further, there is no indication the statement in the affidavit

was presented to the grand jury, because it was not included in the indictment.  The indictment

makes no mention of ████████████████████, and instead alleges that "[o]n or about

October 30, 2013, L.A. and M.R. attended a meeting at CCLRC." (Doc. 1: Indictment, ¶ 33).

Tyson would have the Court infer the falsity of the affidavit[2] (not the indictment) from

the following facts: ███████████████ filed an application on behalf of RCI Services with the

Land Bank on June 25, 2013. An employee of the Land Bank responded that RCI Services would

be added to the demolition contractor list, and call detail records demonstrate calls between ████

███████████████████████████████████████, between September 4, 2013

and October 9, 2013.

While those facts are true, they do not undercut—let alone prove false—Special Agent

Heiss' statement in the affidavit. Special Agent Heiss' statement was meant to convey that

despite initially submitting an application to become an approved Land Bank demolition

contractor in February of 2013, RCI Services was not added to the Land Bank's system as an

---

[2] Tyson claims that certain statements in the search warrant affidavit are false, but has not made any claim that they were knowingly false, as would be required to allege misconduct. If Tyson had any basis to make such an allegation he would have moved to suppress the evidence obtained from the warrant and requested a Franks hearing.  He has notably not done so.

approved demolition contractor and did not receive the opportunity to bid on any Land Bank demolition jobs until after he met with Tyson regarding the projects at Tyson's home on ███████ Road. RCI Services applied twice to be an approved demolition contractor with the Land Bank in February 2013 and on June 25, 2013, but it was not added to the Land Bank demolition contractor list until November 21, 2013, and was not invited to bid on a demolition job until November 26, 2013, after M.R. met with Tyson and arranged for work to be completed at Tyson's home. (See Exs. A. Nov. 21, 2013 Email & B. Nov. 26, 2013 Email).

M.R.'s "repeated contact with the Land Bank's commercial demolition officer", (Doc. 100: Tyson's Mot. to Dismiss, PageID 1046), supports Special Agent Heiss' statement. After applying to the Land Bank in February and June, M.R. continued to reach out to check on the status of RCI's application. These calls with the Land Bank were extremely short, demonstrating that M.R. was not in fact having any meaningful communication with the Land Bank at this time. In comparison, M.R. also communicated with Tyson in October 2013, engaging in calls lasting up to almost seven minutes.  These are substantive calls to discuss the work at ██████ that would get M.R. into the Land Bank. Tyson fails to present any evidence negating this claim or showing that RCI Services was added to the Land Bank demolition contractor list and invited to bid on demolition jobs prior to M.R. agreeing to do work for Tyson. Thus, Tyson fails to demonstrate this statement is false.  Moreover, even assuming this statement in the affidavit were false—which is not—Tyson fails to demonstrate any likelihood that this statement was presented to the Grand Jury, as these facts were not included in the indictment.

### 2. The indictment does not allege that M.R. was present at Tyson's residence the entire time the work was being completed.

Tyson's next allegation is that ██████████████████████████████ ██████████████████████████         Tyson admits that neither ██████████████

███████████████████████████████████████ Rather, the indictment alleges a period between on or about October 21, 2013, through on or about October 24, 2013. Tyson alleges that during those dates M.R.'s phone connected to 42 different towers and that he had 34 phone communications with ██████████, who was working on the waterline, and, according to Tyson's reasoning, █████████████████████████████████████ ██████████ As an initial matter—and in accordance with Rule 6(e)—there is no indication the statement in the affidavit was presented to the grand jury, because it was not included in the indictment.  Tyson claims the "progression" from greater detail in the affidavit to generality in the indictment is evidence the government knew of certain falsities (Doc. 80: Tyson's Mot. for Disclosure of Grand Jury Trans., PageID 685-86).  In fact, it is just the opposite. At the time the search warrant affidavit was drafted, the government did not have the cell tower records that Tyson claims refute this statement.[3] Rather, the affidavit was drafted to obtain those exact records. It was only after the government obtained the cell tower records that it presented charges to the grand jury, and those charges specifically did *not* allege that M.R. was at ██████████ the entire time the work was completed. The search warrant affidavit was submitted based on information known to and believed by the government at that time, and as the government received additional records and continued its investigation, it drafted the indictment accordingly.[4]

---

[3] While Tyson claims the cell tower records prove that M.R. was not at ██████████ the entire time the work was completed, cell tower records alone cannot confirm or disconfirm whether M.R. was at ██████████ at the time in question. The records received do not and cannot pinpoint M.R.'s exact location at a specific point in time, which is why the government did not include such specifics in the indictment.

[4] In a footnote, Tyson also seeks to attack the government's most recent production of telephone records in response to the court's January 16, 2020 order.  On January 24, 2020, the government

Yet even assuming Tyson's allegations are true – that M.R. was not present the entire time the waterline was being completed – that does not make the indictment insufficient. The indictment contains the elements of the offense charged and gives Tyson a detailed summary of the charges against which he must defend.  The indictment does not allege that M.R. was at Tyson's house the entire time the waterline was being installed; rather, that M.R. and others installed the waterline on or about October 21, 2013 through October 24, 2013.  Additionally, call detail records and other evidence support the fact that M.R. was at Tyson's residence during that time period. The government has no obligation to allege a specific time that the installation took place. While inconsistencies in M.R.'s story could be relevant to his credibility, that issue shall be determined by the trier of fact. *See United States v. Creek*, 403 F.2d 220, 220-21 (6th Cir. 1968); *see also infra* II.C..

### 3. The indictment does not charge that M.R. cut down a tree in Tyson's backyard.

Tyson's final baseless allegation is that false testimony was presented regarding whether the tree in the back of Tyson's residence was removed.  In his interview on March 9, 2018, regarding the tree in the backyard, M.R. stated, █████████████████████████████ ████████████████████████████████████████████████████████████ The affidavit states, ██████████████████████████████████████ ████████████████████████████████████████████████████

---

produced, *inter alia*, 2014 phone records that were obtained by SIGTARP in response to a grand jury subpoena issued in another district.  Undersigned counsel had no knowledge of these records until required to respond to Tyson's motion to compel and had been proceeding on the understanding that the phone records produced to Tyson earlier in discovery were one and the same as those relied upon in the search warrant affidavit. Undersigned counsel did not obtain the underlying data of these records until responding to the motion to compel because these records are from 2014 and do not contain any cell cite location information.

████████████████████████████████ This statement indicates that ████

███████████████████████████████████████████████████████████████████

██████████████████████ Even assuming Tyson never had a tree in the back of his

residence removed, the indictment remains accurate and more than sufficient. The indictment

states that "[i]n or around October 2013, J.P. was hired by M.R. and paid $1,000 to cut down a

tree at TYSON's Property."  Thus, the indictment only alleges that one single tree in the front

yard was removed.  The indictment does not mention a second tree, therefore Tyson fails to

demonstrate that any evidence regarding a second tree was ever presented to the grand jury.

Furthermore, even assuming such evidence was presented to the grand jury, Tyson fails to

demonstrate how such testimony affected the sufficiency of the evidence presented to the grand

jury as no mention of the tree is included in the indictment.

### C.  The government is not required to advise the grand jury of credibility matters.

Tyson's lengthy list of baseless accusations continues with a claim that that the

government committed misconduct by failing to advise the grand jury about M.R.'s alleged

credibility issues. Noticeably, Tyson fails to cite any authority that provides that the government

must present credibility issues to the grand jury.  Rather, in *United States v. Williams*, 504 U.S.

36, 52-54 (1992), the Supreme Court held that the Fifth Amendment does not require a

prosecutor to present exculpatory evidence to the grand jury.  *See also United States v. Angel*,

355 F.3d 462, 475 (6th Cir. 2004) (the government has "no judicially enforceable duty to provide

the grand jury with exculpatory evidence").  Similarly, dismissal is not warranted for a

prosecutor's failure to present witness credibility matters to the grand jury. *See United States v.*

*Adamo*, 742 F.2d 927, 937-38 (6th Cir. 1984) (holding that the government has no duty to

disclose the credibility of witnesses to the grand jury or a witness's prior perjury because witness

credibility is actually a form of exculpatory evidence); *see also United States v. Haynes*, 216 F.3d 789, 798 (9th Cir. 2000) (citing *Williams*, 504 U.S. at 51-55), amended on other grounds, 216 F.3d 789 (9th Cir. 2000); *United States v. Reid*, 911 F.2d 1456, 1459-60 (10th Cir. 1990), abrogated on other grounds by *United States v. Camacho*, 137 F.3d 1220, 1224 (10th Cir. 1998); *United States v. Sweeney*, 688 F.2d 1131, 1138-39 (7th Cir. 1982). Because the government has no obligation to present credibility evidence to the grand jury and the indictment sets forth the elements of the offenses charged in more than sufficient detail, Tyson has failed to demonstrate grounds to dismiss the indictment.

Moreover, even assuming the government presented false testimony to the grand jury as Tyson alleges herein—*which it did not*—Tyson still would not have demonstrated a sufficient basis to dismiss the grand jury indictment. "[T]he law is clear that a court may not order dismissal of an indictment under its supervisory power unless the defendant demonstrates that 'prosecutorial misconduct is a long-standing or common problem in grand jury proceedings in [the] district.'" *United States v. Griffith*, 756 F.2d 1244, 1249 (6th Cir. 1985) (citing *United States v. Nembhard*, 676 F.2d 193, 199 (6th Cir. 1982)). Further, "as long as there is 'some competent evidence to sustain the charge issued by the Grand Jury' an indictment will not be dismissed solely on the basis that other evidence presented to the grand jury may have been false or misleading." *United States v. Labbous*, 82 F.3d 419 (6th Cir. 1996) (citing *Adamo*, 742 F.2d at 939) Thus, even if Tyson's allegations were true—which they are not—Tyson still fails to allege grounds sufficient to dismiss the indictment.[5]

---

[5] Tyson attempts to bolster his argument by claiming he was prejudiced by the government failing to disclose information regarding M.R.'s credibility "in violation of its own policy." First, material that goes to M.R.'s credibility falls under *Giglio*, and the Department of Justice

### D.  Tyson's allegations that the government mis-instructed the grand jury are also unfounded.

Tyson's next baseless accusation is that the government mis-instructed the grand jury by seeking to indict Tyson under HSWF as both a private person and a public official.  As an initial matter, the government has no obligation to instruct a grand jury on the law.  *See United States v. Lopez-Lopez*, 282 F.3d 1, 9 (1st Cir. 2002) ("Courts . . . generally have found that the prosecutor satisfactorily explains the offense to be charged by simply reading the statute to the grand jury." (internal quotation marks omitted)); *United States v. Warren*, 16 F.3d 247, 253 (8th Cir. 1994); *United States v. Larrazolo*, 869 F.2d 1354, 1359 (9th Cir. 1989).  If a prosecutor instructs the grand jury on the law, the instructions should, of course, be accurate. *See United States v. Wiseman*, 172 F.3d 1196, 1204-06 (10th Cir. 1999); *United States v. Sigma Int'l Inc.*, 196 F.3d 1314, 1323 (11th Cir. 1999); *Larrazolo*, 869 F.2d at 1359; *United States v. Wright*, 667 F.2d 793, 796 (9th Cir. 1982).  However, if incorrect legal instructions are inadvertently given, a subsequent conviction by a petit jury will usually cure any initial defect by demonstrating that the error was harmless. *United States v. Anderson*, 61 F.3d 1290, 1297 (7th Cir. 1995).

Here, even if the government instructed the grand jury with respect to HSWF, it is well settled that the Sixth Circuit permits charging under alternative theories.  *See United States v. Dean*, 969 F.2d 187, 195 (6th Cir. 1992) ("The conviction may be upheld upon proof of either of the alternative means of committing the offense.").  Even where the statute itself "denounces the

---

does not have a policy about presenting *Giglio* information to the grand jury.  It appears that Tyson is mistakenly referencing DOJ's *Brady* policy.  And, even if there was a relevant policy, "the U.S. Attorney's Manual is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." *United States v. Myers*, 123 F.3d 350, 356 (6th Cir. 1997) (citing *United States v. Goodwin,* 57 F.3d 815, 818 (9th Cir.1995)).

offense disjunctively"—which is not the case with public official versus private person under HSWF—"an offense may be charged conjunctively in an indictment." *United States v. Murph*, 707 F.2d 895, 896 (6th Cir. 1983); *see also United States v. Hathaway*, 798 F.2d 902 (6th Cir. 1986) ("[A]n indictment count that alleges in the conjunctive a number of means of committing a crime can support a conviction if any of the alleged means are proved."). The District of Maine and Fifth Circuit cases cited by Tyson concern statutes that denounce prohibited acts in the disjunctive and this outdated and non-binding law does nothing to question this circuit's clear position on conjunctive charging.

### E. Case law cited in Tyson's brief is easily distinguishable from the facts of the present case.

In an effort to support his claims, Tyson cites a handful of out-of-circuit cases, all of which are easily distinguished from the facts of this case. To begin, in *United States v. Peralta*, 763 F. Supp. 14 (S.D.N.Y. 1991), the district court dismissed the indictment based on cumulative errors in the grand jury: (1) the agent's grand jury testimony was inaccurate and (2) the prosecutor failed to properly instruct the grand jury on the meaning of constructive possession. *Id*. at 21. Notably, the district court did not review the grand jury testimony until the conclusion of the trial, and at that point only did so in camera. *Id*. at 16. *Peralta* says nothing about a defendant's burden of demonstrating a particularized need for the grand jury material in the first instance. Here, Tyson has raised nothing more than mere speculations that the government presented false evidence in the grand jury, which falls far short of requiring dismissal.

Tyson also mistakenly relies on two out-of-circuit decisions that predate the Supreme Court's holding in *Williams* that exculpatory evidence need not be presented to the grand jury. In *United States v. Provenzano*, 440 F. Supp. 561 (S.D.N.Y. 1977), the government's "key witness recanted his prior testimony" to the grand jury when presenting a superseding indictment. *Id.* at

564.  Here, Tyson cannot show that any witness, let alone a grand jury witness, has recanted his or her testimony, to the grand jury or otherwise.  In *United States v. Lawson*, 502 F. Supp. 158 (D. Md. 1980), the court found that the prosecutor made a "deliberate effort to place false and misleading evidence before the grand jury," and dismissed the indictment without prejudice only after finding that the prosecutor's examination of a witness in the grand jury was "intentionally and repeatedly . . . misleading."  *Id.* at 172.  Tyson has provided nothing other than speculation and innuendo as support for his argument that the government engaged in any misconduct with the grand jury.  Such speculative allegations of misconduct do not meet the dismissal standard.

### F.  Count One of the indictment sufficiently pleads conspiracy to commit both bribery and honest services wire fraud.

Count I of the indictment charges Tyson with conspiracy to commit Bribery and Honest Services Wire Fraud, in violation of 18 U.S.C. § 371.  To prove conspiracy, the government must show that (1) two or persons conspired, or agreed, to commit the crimes of Bribery and Honest Services Wire Fraud; (2) Tyson knowingly and voluntarily joined the conspiracy; and (3) a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.  The indictment in this case more than sufficiently sets forth those elements and advises Tyson of the nature of the allegations against him.

### 1. The indictment alleges qualifying Land Bank business valued at $5,000 or more.

With respect to Count I, Tyson contends that the indictment does not allege qualifying Land Bank business valued at $5,000 or more.  But the indictment sets forth bribes totaling more than $5,000 and multiple Land Bank contracts of greater than $5,000.

Tyson first claims that "the alleged value of the bribe is irrelevant," (Doc. 100: Tyson's Mot. to Dismiss, PageID 1054), but this is incorrect.  Under 18 U.S.C. § 666(a)(1)(B), the $5,000 threshold can be met by either the amount of the bribe or the value of business, transaction, or

series of transactions (*e.g.*, government contract). *United States v. Zimmerman*, 509 F.3d 920, 926-27 (8th Cir. 2007) (meeting the $5,000 threshold for some counts based on the "gratuity alleged" and others based on the "intangible benefit"). Several circuits have agreed that "[w]here the bribe-giver received an intangible benefit, . . . the bribe amount [may be used] as a proxy to stand for the value of the business or the transaction." *United States v. Townsend*, 630 F.3d 1003, 1011 (11th Cir. 2011) (citing *United States v. McNair*, 605 F.3d 1152, 1186 n.38 (11th Cir. 2010)); *see also United States v. Fernandes*, 272 F.3d 938 (7th Cir. 2001) ($5,000 element satisfied because total bribes were greater than that and defendant received additional things of value); *United States v. Zwick*, 199 F.3d 672, 689 (3d Cir. 1999) (value of development, potential tax benefits, permit fees, and paid bribes satisfied value element), abrogated on other grounds by *Sabri v. United States*, 541 U.S. 600 (2014); *United States v. Marmolego*, 89 F.3d 1185, 1193-94 (5th Cir. 1996).

Here, as detailed in paragraphs 29, 31, and 52 and of the indictment, M.R. made payments to contractors who performed work at Tyson's house in the amounts of approximately $2,565, $1,000, and $3,200 respectively, totaling nearly $6,700 over the course of less than one year (October 2013-June 2014). *See United States v. Valentine*, 63 F.3d 459, 466 (6th Cir. 1995) ("There is ample support for allowing the government to aggregate several acts to establish the $5,000 threshold required for prosecution where the multiple conversions are part of a single scheme.").

Next, Tyson claims that "Count One says nothing regarding the value of the Land Bank 'business [or] transaction[s]' at issue." (Doc. 100: Tyson's Mot. to Dismiss, PageID 1054). But paragraphs 46, 47, and 48 of the indictment allege that RCI services received checks from CCLRC for demolition jobs in the amounts of approximately $13,508, $12,750, and $6,097,

respectively, totaling $32,355 over the course of less than one year (January 2014-March 2014).

*See Valentine*, 63 F.3d at 466 (6th Cir. 1995); *see also United States v. Hines*, 541 F.3d 833, 837 (8th Cir. 2008) ("The plain language of the statute does not require a restricted, technical interpretation that would prevent the consideration of the 'thing's' value to other parties with an immediate interest in the transaction.").

Section 666(a)(1)(B) "does not specifically require that the payor or the payee of the bribe value the transaction at $5,000. Instead, the $5,000 triggering provision ensures that the statute reaches acts of bribery involving transactions of substantial value. To decide whether a transaction involving intangibles has a value of $5,000 or more, courts should look to traditional valuation methods." *Marmolego*, 89 F.3d at 1193-94.  By pleading both $6,700 in bribe payments and $32,355 in business, the government has established that the value of the contracts M.R. received as a result of bribery and fraud far exceed the $5,000 threshold.[6]

---

[6] Although, as discussed above, the $5,000 threshold can be satisfied by either the bribe amount or value of the transaction, the government may, in an abundance of caution, seek to obtain a superseding indictment to eliminate any potential ambiguities that Tyson, an agent of CCLRC, conspired to corruptly solicit, demand for the benefit of any person, accept and agree to accept a thing of value from a person, intending to be influenced and rewarded in connection with a transaction and series of transactions involving $5,000 or more.  The anticipated return date of the superseding indictment is the week of February 3, 2020.  This correction—and correction of other certain scrivener's errors—should not affect the timing of the trial, particularly because the government is not changing or adding new charges.  *See United States v. Rojas-Contreras*, 474 U.S. 231, 234-37 (1985) (holding that the filing of a superseding indictment while an indictment is pending does not trigger a new 30-day defense-trial-preparation period); *United States v. Prince*, 214 F.3d 740, 763 (6th Cir. 2000) (determining that defendant had adequate time to consult with his attorney and prepare his defense when superseding indictment did not add a new charge).

**2. The indictment alleges Tyson was a public official and that he owed a fiduciary duty to the citizens of Cuyahoga County.**

Tyson claims that the indictment, with respect to the conspiracy to commit honest services fraud, "fails to adequately allege that Mr. Tyson owed a duty to the citizens of Cuyahoga County." (Doc. 100: Tyson's Mot. to Dismiss, PageID 1053.) Despite this allegation, Tyson admits that the indictment alleges that he "did knowingly and intentionally[] conspire …to defraud and deprive . . . the citizens of Cuyahoga County of their right to [Mr. Tyson's] honest services." (*Id.*, PageID 1054.) Nevertheless, Tyson claims that he was not a government employee and did not owe a fiduciary duty to the citizens of Cuyahoga County. Tyson is mistaken. Tyson did not have to be government employee to owe a fiduciary duty to the citizens of Cuyahoga County.

Tyson provides two tests to determine whether he was a fiduciary. (*Id.*, PageID 1055.) Tyson states that these tests are: "(1) a reliance test, under which one may be a fiduciary when others rely upon him because of a special relationship with the government, and (2) a *de facto* control test, under which a person who in fact makes governmental decisions may be held to be a governmental fiduciary." (*Id.*). Under both tests outlined by Tyson, he is a fiduciary. First, with respect to the special relationship, under Ohio Rev. Code 1724.10(A)(2), the Land Bank, Tyson's employer, was specifically designated as an agent of Cuyahoga County. (See Ex. C. Resolution.) As an agent of Cuyahoga County, the Land Bank was authorized "to act as the agent of [Cuyahoga County] to remove or repair nuisance buildings, and provide[] for a lien to attach to the property for such expenses." (See Ex. D. Act.) Second, regarding the control test, in accordance with its designation as an agent of Cuyahoga County, the Land Bank was given authority to exercise the powers and perform the duties of Cuyahoga County. (See Ex. C. Resolution.) As such, the articles of incorporation of the Land Bank state that it "shall be

15

operated exclusively as a county land reutilization corporation exercising the essential *governmental* purposes provided for under Chapters 1724 and 5722 of the Ohio Revised Code." (Ex. E. Articles of Incorporation at 4) (emphasis added). Thus, even under the tests outlined by Tyson himself, the Land Bank is an agent of Cuyahoga County and exercises powers and performs duties related to essential governmental purposes, and as an employee of the Land Bank, Tyson owed a fiduciary duty to the citizens of Cuyahoga County.

Contrary to Tyson's assertion that the indictment was "bereft of any allegations concerning any special relationship," the indictment clearly states that "TYSON was an *agent and fiduciary of Cuyahoga County Land Reutilization Corporation* ("CCLRC"), also known as the Cuyahoga County Land Bank, where he held the title of Property Specialist." (Doc. 1: Indictment, ¶ 1). The indictment further alleges that "CCLRC was a non-profit, *government-purposed* organization that was registered in the State of Ohio on or about April 16, 2009." (*Id.*, ¶ 2).

These allegations are more than sufficient to allege Tyson's fiduciary duty under Rule 7. In *United States v. Hudson*, 491 F.3d 590 (6th Cir. 2007), the defendant challenged the sufficiency of the indictment regarding an agency status element—that he was agent of the government entity at issue. *Id.* at 593. The defendant argued that certain counts failed as a matter of law because they "d[id] not spell out the details of the agency relationship," and "instead simply track[ed] the language of the statute." *Id.* Specifically, they alleged the defendant was "acting as an agent" at the time in question. *Id.* A wealth of case law defines the concept of agency. *See, e.g.*, *Shah v. Deaconess Hosp.*, 355 F.3d 496, 499 (6th Cir. 2004) (setting forth "common law agency test"). But in *Hudson*, although other counts had provided some details of the defendant's work for the entity, the indictment had not spelled out the facts

from which an agency relationship could be found.  491 F.3d at 593.  Still, the statutory language

was sufficient.  *Id.*  Put another way, the indictment sufficiently alleged the agency element by

alleging that the defendant was acting as an agent.  The indictment here more than tracks the

statutory language, and is more than sufficient under Rule 7.

### G. Count Five of the indictment is within the statute of limitations and meets the $5,000 statutory threshold.

Count Five of the indictment charges Tyson with Bribery in Federally Funded Programs,

in violation of 18 U.S.C. § 666(a)(1)(B).  To prove Bribery in Federally Funded Programs, the

government must show that (1) Tyson in his role as an agent and fiduciary of CCLRC and liaison

to the City of East Cleveland; (2) solicited, demanded, accepted or agree to accept anything of

value from another person; (3) that Tyson did so corruptly with the intent to be influenced or

rewarded in connection with any business, transaction, or series of transactions of the CCLRC

and the City of East Cleveland; (4) this business transaction, or series of transactions involved

anything of value of $5,000 or more; and (5) each Municipality received benefits in excess of

$10,000 under any Federal program involving a grant, contract, subsidy, loan, guarantee,

insurance, or other form of Federal assistance, in the one-year periods charged in each count.

### 1. The charges in the indictment are within the five-year statute of limitations because the offense was not complete until July 2014.

With respect to Federal Funds Bribery, Tyson incorrectly contends that the "offense was

completed, at the latest, on October 21, 2013," when Drain Guru invoiced M.R. (Doc. 100:

Tyson's Mot. to Dismiss, PageID 1056).  Tyson is correct that the statute of limitations for

bribery begins to run when the offense is completed.  However, Tyson wrongly states when the

offense was completed.  In *United States v. Pacchioli*, 718 F.3d 1294, 1300 (11th Cir. 2013), the

Court explained that the 18 U.S.C. 666(a)(2) statute is disjunctive and can be proven in one of

three ways.  *Id.* ("a § 666(a)(2) violation can be proven in three distinct ways: (1) either by

giving, offering or agreeing to give a thing of value to any person"). Thus, *Pacchioli* held that the defendant's statute of limitations claim was meritless where the government chose to prove all three ways of violating the bribery offense "because all of the elements of [the] bribery offense were not met until [the defendant] corruptly gave a thing of value, by installing the electric generators, in 2006 or 2007." Similarly, 18 U.S.C. 666(a)(1)(B) can be proven in three ways. The government alleged and can choose to prove that Tyson solicited, agreed to accept, or accepted anything of value. 18 U.S.C. 666(a)(1)(B); (Doc. 1: Indictment, ¶ 57.)

Here, the government intends to prove all three at trial.    As it relates to the statute of limitations, the government will prove that Tyson accepted a thing of value in July of 2014.  The indictment alleges that Tyson accepted repair of his waterline, removal of a tree, and concrete repair as a thing of value from M.R. in exchange for assisting M.R. in being put on the Land Bank's demolition contractor list. *See United States v. Lopez-Cotto*, 884 F.3d 1, 10 (1st Cir.), *cert. denied,* 139 S. Ct. 124, 202 L. Ed. 2d 77 (2018) (In a stream of benefits prosecution, the relevant "anything of value" is the singular bribe of an ongoing stream of benefits.)  Thus, Tyson did not completely accept his thing of value until July 2014 when the concrete work was complete.  Therefore, the five-year statute of limitations would not expire until in or around July 2019; the indictment in this case was returned in 2018.

This case is distinguishable from *United States v. Jones*, 676 F. Supp. 2d 500, 517 (W.D. Tex. 2009).  In that case "[t]he Government argue[d] '[t]he offense is not complete until the [G]overnment can show the connection between the bribe and the subsequent transaction.'"  The court found that the offense was complete and the statute of limitations began to run when the "anything of value" was exchanged.  In that case, the "anything of value" was one $750 check.  Similarly, this case is distinguishable from *United States v. Musto*, No. 3:10CR-338,

2012 WL 5879609 (M.D. Pa. Nov. 21, 2012). In *Musto*, the government also argued that the bribery offense was not complete and the statute of limitations did not begin to run until the subsequent official action was taken.  Here, the government is not arguing that the offense was not completed until the subsequent transaction or official action took place. Rather, the government agrees that the offense is complete and the statute of limitations began to run when the "anything of value" was exchanged.  Unlike, *Jones* the "anything of value" in this case was not one single check but multiple things that were jointly accepted as the singular bribe and therefore a thing of value: the waterline, the tree removal, and the concrete repair.  Thus, the thing of value in this case was not exchanged and the statute of limitations did not begin to run until the concrete repair was complete in July of 2014.

### 2. The indictment meets the statutory threshold of $5,000 or more because the exemption for bona fide salary does not apply.

Lastly, Tyson improperly relies on 18 U.S.C. 666(c) to argue that RCI's demolition contracts valued at approximately $32,355 do not satisfy the $5,000 threshold, because they were performed in the ordinary course of business.  Section 666(c), a subsequent amendment to section 666, exempts certain payments from the statute: "This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business."  The government acknowledges that in *United States v. Mills*, the Sixth Circuit held that section 666(c) applies to the $5,000 threshold requirement.  140 F.3d 630, 632-33 (6th Cir. 1998).  However, the value of RCI's demolition contracts are easily distinguished from the bona fide salaries that section 666(c) is designed to exempt.  Both the legislative history of section 666 and the weight of the case law support the common sense argument that contracts obtained by alleged bribery or fraud are not genuinely bona fide and in the usual course of business, and thereby not exempted by section 666(c).

The legislative history of section 666 makes clear that in passing the statute, Congress *intended* to criminalize bribery and fraud used to procure otherwise legitimate employment, contracts, and business. Indeed, in passing section 666, Congress stated that it intended "to reach thefts and bribery in situations of the types involved in the *Del Toro*, *Hinton* and *Mosley* cases cited herein." S. Rep. No. 98-225, at 370 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3511. *United States v. Hinton*, in particular, presents facts nearly identical to those in the present case. 683 F.2d 195 (7th Cir. 1982). In *Hinton*, two individuals in charge of awarding federally-funded home construction contracts demanded and received kickbacks from the contractors. *Id.* at 197.

The majority of courts that have considered this same question have reached similar conclusions. *See*, *e.g.*, *United States v. Urlacher*, 979 F.2d 935 (2d Cir. 1992) (holding section 666 criminalizes not only situations where no legitimate work was performed, but also situations where legitimate work was performed)[7]; *United States v. Cornier-Ortiz*, 361 F.3d 29 (1st Cir. 2004) ("That the payments were made for a legitimate purpose – to hire a CGP expert to obtain funding for maintenance work that was indeed done – does not render them bona fide under the statute if they were intentionally misapplied as they were here via sham contracts that skirted conflict of interest rules.").

Tyson attempts to rely on *Mills* and *United States v. Mann*, No. 97-6179, 1999 U.S. App. LEXIS 160, at *2 (6th Cir. Jan. 4, 1999), to argue that section 666(c) should apply here. In both those cases, however, the exemption applied specifically to a government employee's *salary*, not the value of a fraudulently obtained *contract*. In *Mills*, as a result of bribery, Shelby County hired

---

[7] In *United States v. Freeman*, 86 F. App'x 35 (6th Cir. 2003), the Sixth Circuit found that jury instructions based on the Second Circuit's decision in *Urlacher* were appropriate. 86 F. App'x at 41.

two deputy sheriffs who subsequently worked full-time in those positions and were compensated.  In comparison, M.R. was never hired as an employee of CCLRB nor received a salary from CCLRB.  Instead, as a result of the bribe payments made to Tyson, M.R. received access to bid on CCLRB jobs. Bidding on and winning these jobs did not constitute the execution of a CCLRB duty in the "usual course of business."  *Mills*, 140 F.3d at 633 n.1 (citing *United States v. Grubb*, 11 F.3d 426 (4th Cir. 1993) ("In *Grubb*, the court held subsection (c) inapplicable because the co-conspirator's wages were clearly not bona fide. In fact, the court noted that 'he performed little work for the Sheriff's office' and did not 'perform functions for the sheriff's office on a regular basis.'").  The part-time work at the Sheriff's office in *Grubb* is akin to the work of a contractor, like RCI, which did not involve the "actual performance of necessary governmental duties," and therefore, was not bona fide within the meaning of the statute.

Furthermore, in *Mills*, the court specifically noted that the bribe payments at issue totaled below $5,000 and left open the question whether the counts would have stood had the bribes themselves met the threshold.  140 F.3d at 633 ("In such a case, the values of the allegedly illegal transactions are not the salaries to be paid to deputy sheriffs for actual performance of necessary governmental duties. Rather, the only guide to determining the true values of the transactions is the money required to secure the positions in the first place.").  Here, even if the court determines that section 666(c) applies outside the context of a bona fide salary, *Mills* is still not determinative because the bribe payments—in the form of free work Riley had completed at Tyson's residence—totaled approximately $6,700, thereby satisfying the threshold.

### III.    CONCLUSION

The indictment in this case is more than sufficient.  It contains the elements of all the offenses charged, fairly informs Tyson of the charges against him, and asserts facts which constitute an offense.  Tyson's motion should be denied.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:    /s/ Chelsea S. Rice
Chelsea S. Rice (OH: 0076905)
Vanessa V. Healy (OH: 0092212)
Carmen E. Henderson (OH: 0089212)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3752/3967
(216) 522-8355 (facsimile)
Chelsea.Rice@usdoj.gov
Carmen.Henderson@usdoj.gov
Vanessa.Healy@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of February 2020 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ Chelsea S. Rice
Chelsea S. Rice
Assistant U.S. Attorney