THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FILED**

FEB 07 2020

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:18-CR-708 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| KENNETH TYSON, | ) | **DEFENDANT'S MOTION TO** |
| | ) | **CONTINUE TRIAL DATES AND** |
| Defendant. | ) | **PRETRIAL DEADLINES** |

Defendant Kenneth Tyson hereby respectfully moves this Court for a continuance of the

trial dates and all pretrial deadlines, including all pretrial motions and trial-document due dates, in

this case. For the reasons set forth below, Mr. Tyson respectfully requests that the Court set a trial

date for on or about May 4, 2020, with all pretrial deadlines recalibrated accordingly.

I.      BACKGROUND

On November 21, 2018, Mr. Tyson was indicted as a result of alleged acts that occurred in

2013 and, purportedly, 2014. *See* Indictment, ECF No. 1. Per this Court's initial Trial Order, the

case was originally set for trial beginning on February 12, 2019. Mr. Tyson subsequently filed

two unopposed motions to continue the trial date, ECF No. 12, ECF No. 34, both of which were

granted, resulting in a revised trial date of December 10, 2019, ECF No. 40.

Just days after Mr. Tyson's second unopposed motion for a continuance, the government

filed an ultimately meritless motion to remove Mr. Tyson's lead counsel from the case due to an

alleged conflict of interest. Out of an abundance of caution, lead counsel was therefore forced to

remove himself from the case for several months, until the conflict issue was eventually resolved—

in Mr. Tyson's and lead counsel's favor on September 4, 2019. ECF No. 50. This government-

caused, multi-month delay, coupled with a 320-gigabyte government document dump ten months

after indictment, required Mr. Tyson to file another motion to continue, on September 16, 2019. ECF No. 52. On September 26, 2019, the Court granted the motion and entered the currently operative, revised scheduled. ECF No. 54. Per that schedule, trial is presently set for February 18, 2020. *Id.* Pretrial motions were due on January 28, 2020, with responses due by February 4, 2020. *Id.* And Final Pretrial is scheduled for February 11, 2020. *Id.*

In the thick of final preparations for trial—*after* Mr. Tyson had filed his motion to dismiss and other pretrial motions and even *after* the government had filed an opposition to the motion to dismiss contending that the original indictment was unimpeachable—the government obtained a superseding indictment two days ago, on February 5, 2020. Thus, the government obtained the superseding indictment over *a week after* the pre-trial motion deadline, nearly *fifteen months after* the original indictment, and only 13 days before the case was to go to trial on the original indictment.

Though the alterations in the superseding indictment did not require much ink, their impact is relatively far-reaching, requiring additional pre-trial motion practice and alterations to trial strategy. First, the government changed the alleged victim of the conspiracy. In the original indictment, the government alleges that Mr. Tyson deprived *the citizens of Cuyahoga County* of their right to Honest Services. Indictment, ECF No. 1, ¶ 22(b). But the superseding indictment scraps this key allegation, instead alleging that the independent Land Bank was a "Cuyahoga County . . . agency," and that Mr. Tyson somehow deprived *the Land Bank* of its right to honest and faithful services. Superseding Indictment, ECF No. 106, ¶¶ 2, 23(b). The superseding indictment also fundamentally reworked another key portion of the charge of conspiracy to commit bribery concerning programs receiving federal funds. As pointed out in Mr. Tyson's motion to dismiss, the portion of Count One was fatally flawed in the original indictment, as it alleged that

2

M.R. provided Mr. Tyson with $5,000 worth of services at a property he allegedly controlled. *See* Mot. to Dismiss, ECF No. 100, at p.10-12; Indictment, ECF No. 1, ¶ 22(a). The superseding indictment jettisons this allegation in its entirety and replaces it with another allegation, *completely new to Count One*, that it was the "business, transaction, and series of transactions of [*the Land Bank*]" that involved $5,000 or more. Superseding Indictment, ECF No. 106, ¶ 23(b). Further, with respect to the indictment's three substantive wire-fraud counts, the original indictment had alleged that the jurisdiction element was met by the fact that the emails at issue—sent from one northeast Ohio recipient to another—pinged off of a server in Arizona. Indictment, ECF No. 1, ¶ 55. The superseding indictment jettisons this allegation as well, drastically broadening the potential basis of conviction on these counts by alleging simply that the wires were "transmitted . . . in interstate commerce" in some amorphous, undefined way. Superseding Indictment, ECF No. 106, ¶ 56.

Separately, in its January 27, 2020 order, this Court had granted, in large part, Mr. Tyson's motion for a bill of particulars, requiring that the government provide a bill of particulars "by January 31, 2020," specifying "the date and location[, but not the time,] of the meeting" that supposedly launched the conspiracy at issue here and is at the very center of this case. ECF No. 98, at 4. Rather than comply with that order, on January 31, 2020, the government, instead of filing a bill of particulars, *emailed* counsel providing a date *range* rather than a date and a street intersection rather than a specific meeting location. Moreover, the date *range* provided actually expands the length of the conspiracy itself. That is, it reaches back multiple weeks *before* the indictment alleges the conspiracy began. The emailed "bill of particulars" response thus had the perverse effect of *expanding* the indictment and fostering confusion, rather than actually providing particularity. In order to resolve this issue without Court intervention, the parties met on February

6, 2020. At the meeting, the government agreed to correct the location information it provided, but it remained steadfast in its refusal to provide the date ordered by the Court, choosing to stick to the date range that *expands* the scope of the indictment to include September 2013.

## II.    ARGUMENT

In light of the developments outlined above, the ends of justice require that the trial date in this case be postponed, at least until May 4, 2020,[1] and that the pretrial deadline be adjusted accordingly. Mr. Tyson will be badly prejudiced otherwise. *See, e.g.*, 18 U.S.C. § 3161(h)(7)(B)(i) (court must consider "[w]hether the failure to grant such a continuance . . . would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice"). Speedy trial concerns are a nullity here, as Mr. Tyson has waived that issue with respect to this requested extension, and he and his counsel have adjudged that such an extension is crucial to mounting an effective defense. *See* 18 U.S.C. § 3161(h)(7)(A). Nor will the public interest be harmed by the postponement. *See id.* Accordingly, there is no reason to deny the continuance and every reason to grant it.

### A. The Superseding Indictment Will Require a Supplemental Motion to Dismiss.

On January 28, 2020, Mr. Tyson filed a motion to dismiss. ECF No. 100. On February 4, 2020, the government responded to the motion to dismiss, ECF No. 105, and on February 7, 2020, the government obtained the superseding indictment, ECF No. 106. Accordingly, the motion to dismiss remains outstanding. The defense now requires time to carefully examine the original and superseding indictments and determine what issues it must now research, brief, and advocate in a supplemental motion to dismiss.

---

[1] For scheduling purposes, it is important to note that lead counsel for Mr. Tyson has pre-planned and pre-paid international travel with his family through much of the month of March 2020, which is another reason why the May date is appropriate here.

What can be said for certain, however, is that the superseding indictment does not render moot the outstanding motion to dismiss, most especially the time-bar and financial-threshold argument related to Count Five, as well as aspects of the arguments as to Count One. To the contrary, far from negating the pending motion to dismiss, the superseding indictment will necessitate the filing of a supplement to that motion, as it raises new grounds for dismissal. As discussed in the background section above, the superseding indictment alters, expands, and broadens certain crucial aspects of the indictment. As the court knows, the original indictment was filed at the very last moment (and indeed, at least with respect to Count Five, was actually filed *too late*—beyond the five-year limitations period). The superseding indictment, on its own, runs wholly and indisputably afoul of the statute of limitations. The only way any portion of it may be salvaged is if it "relates back" to a timely portion of the original indictment. Even then, the superseding indictment only relates back if (and thus is only rendered salvageable if) it does not "broaden" the original indictment. A superseding indictment filed outside the initial limitations period only relates back if it does not "broaden" the original indictment. *United States v. Smith*, 197 F.3d 225, 228 (6th Cir. 1999). "'An indictment is broadened when the government, the court, or both, broadens the *possible bases for conviction* beyond those presented by the grand jury.'" *United States v. McQuarrie*, No. 16-cr-20499-01, 2018 U.S. Dist. LEXIS 44191, at *3-5 (E.D. Mich. Mar. 19, 2018) (quoting *United States v. Watford*, 468 F.3d 891, 908 (6th Cir. 2006)).

Count Five was already untimely and remains so. But now, Counts One through Four, as altered by the superseding indictment are untimely as well, because the alterations to those Counts, discussed above, alter the possible bases for conviction and thus *do not* relate back to the original indictment. Count One, after all, is fundamentally changed both as to the fiduciary-duty theory as well as to the $5,000-threshold element. And the bases for conviction under Counts Two through

Four are drastically expanded: Whereas previously under the original indictment, in order to obtain a conviction, the government would have had to prove that the "wires" (emails) at issue travelled through certain servers in Arizona, per the superseding indictment all that must now be proved is that they in some way—in any way— travelled in interstate commerce. The basis for potential conviction has thus gone from specific to general in the extreme. *See, e.g.*, *McQuarrie*, No. 16-cr-20499-01, 2018 U.S. Dist. LEXIS 44191, at *3-5 (indictment did not relate back where collateral identified as "[j]ib plow[s]" in the original indictment was changed to "a TW 35 tractor"); *United States v. Duran*, 407 F.3d 828 (7th Cir. 2005) (specific-to-general change in allegation, from "Beretta" to "a weapon" constituted an expansion).[2] These expansions cannot relate back, and thus the superseding indictment is untimely. Mr. Tyson needs additional time to fully research and brief these crucial issues, all of which may be dispositive of the entire case.

**B. Additional Time Is Necessary to Brief and Resolve the Bill of Particulars Issue and Other Issues that Remain Outstanding with Respect to Mr. Tyson's Pending Pre-Trial Motions.**

A continuance is necessary to fully brief and analyze the impact of the government's bill-of-particulars shenanigans. The Court's deadline to file motions has passed, and trial is only days away. The Indictment, in multiple locations, plainly alleged that the conspiracy took place beginning "in or around October 2013." Indictment, ECF No. 1, ¶¶ 22, 54, 57. Now, and only through its response to this Court's Order requiring a bill of particulars, at the eleventh hour, the government has attempted to expand the scope of the allegations to "on or about September 17."[3]

---

[2] This research is admittedly incomplete and preliminary. But this fact merely highlights the importance of an extension to thoroughly address these issues.

[3] The government may argue that the indictment's use of the phrase "in or around" October 2013 means that the new September 17, 2013 start date isn't a true expansion; in other words, the government may argue that "in or around" already supplied sufficient wiggle room to encompass September 17. But any such argument is meritless. First, the new September 17 start date is,

This change impermissibly alters the indictment, expands the alleged conspiracy and scheme, and creates material issues that will necessitate review by this Court. This change not only alters trial preparation and defense strategy, but substantiates the need for a more thorough analysis of the grand jury transcripts. Incredibly, though the government has sought to surreptitiously expand the indictment via this emailed "bill of particulars," it has declined to include this expansion in the superseding indictment (issued a full five days *after* the emailed "bill of particulars")—a clear indication that the government is aware its email machinations amount to an impermissible expansion. Mr. Tyson will be prejudiced if he is not granted the appropriate time to analyze, assess, and draft the appropriate motions to address this material issue and properly prepare for trial.

Additionally, the superseding indictment does not render moot the outstanding motion for grand jury transcripts. To the contrary, the superseding indictment underscores the importance of granting that motion and in fact necessitates a supplemental request for the transcripts of proceedings before the second grand jury. In short, the actions of the government to supersede will require a supplement to the original motion.

With respect both to the motion-to-dismiss and grand-jury-transcript motion practice necessitated by the eleventh-hour superseding indictment as well as the motion practice that the emailed "bill of particulars" will require, it is important to recall that Mr. Tyson's counsel is not

---

similar to the prior October start date, itself prefaced with the phrase "on or about." Thus, the government refuses even to be bound by the September 17 date. And if the government were to argue that the "in or around" language applicable to the indictment-alleged October start provides the elasticity needed to encompass September 17, then by that same logic the "on or about" September 17 provides even greater flexibility to push back to start date even further into early September or, perhaps, late August. Second, regardless of any technical quibbling over "in or around October" and "on or about September 17," the bottom line is still the same: The government's "bill of particulars" did nothing to narrow—but rather broadened—the at-issue time frame, contrary to the Court's order and the very purpose of a bill of particulars.

in the habit of filing meritless or unnecessary motions. Indeed, every one of Mr. Tyson's motions that the Court has ruled on to date has been granted at least in part. Due to several unresolved discovery issues, Mr. Tyson was forced to file a motion to compel on October 23, 2019. ECF No. 61. The Court, recognizing some of the same deficiencies, granted Mr. Tyson's request in part and ordered the government to comply by January 24, 2020. ECF No. 89. The government provided over 150 files, most of which are detailed financial records, which Mr. Tyson is diligently working to analyze. And, of course, as already discussed in detail, Mr. Tyson requested a Bill of Particulars from the government setting forth the date, time, and location of an alleged meeting. ECF No. 72-1. On January 27, 2020, the Court granted Mr. Tyson's request in part and ordered the government to provide Mr. Tyson with the date and location of the alleged meeting critical to the indictment. ECF No. 99. And, though the Court has yet to rule on Mr. Tyson's pending motion to dismiss, it is nevertheless already clear that the motion has merit, as the government chose to rush to obtain a superseding indictment in an (ultimately futile) effort to address some of the fatal flaws in the government's case identified in the motion to dismiss.

In short, Mr. Tyson has a well-established track record of lodging only thoughtful, meritorious motions. Given the seriousness of these allegations, Mr. Tyson needs additional time in order to prepare motions of similar caliber regarding the emailed "bill of particulars" and supplemental motions to dismiss and for access to grand jury transcripts.

### C. Mr. Tyson and His Defense Counsel Need Additional Time to Review, Analyze, and Investigate Voluminous Amounts of Recently Provided Discovery Material and Determine Its Effect on Mr. Tyson's Defense.

Moreover, Mr. Tyson recently received an abundance of discovery material from the government which will require significant time and resources to review and analyze. As stated above, on January 24, 2020, Mr. Tyson's defense counsel received discovery from the government

8

containing approximately 150 files – amounting to more than 10,000 pages of documents. Most of these documents relate to financial records (bank statements, tax filings, etc.) that the Court ordered pursuant to Mr. Tyson's Motion to Compel (ECF No. 89.) – and which have been in the government's possession since at least 2017. There are also questions as to whether the government at this time has fully complied with the Court's Order granting Mr. Tyson's Motion to Compel. ECF No. 89. For instance, as it relates to the phone records, Agent Heiss, in a sworn statement, claimed to have analyzed phone records from January 1, 2014 to the present. In response to the Court's Order on the Motion to Compel, the government produced phone records from 2014 and a redacted report relating to the phone records. The phone record report clearly indicates there are phone records from 2015, 2016, and 2017 – yet the government has failed to disclose any of those years. Moreover, the report also redacts certain phone record-related information without any explanation as to the grounds for such redactions. Without more, defense counsel can only assume such records are highly pertinent and harmful to the government's case.

Nonetheless, Mr. Tyson and his defense counsel are still reviewing these documents as thoroughly and quickly as they can. There are multiple files that require sophisticated software to open and review. Mr. Tyson's defense counsel is still working on how to properly access those documents. Furthermore, yesterday Mr. Tyson received yet another batch of documents from the government. Although this production is not as voluminous as the one mentioned above, it is indicative of the government's repeated failure to provide complete discovery in this case. Moreover, Mr. Tyson has still yet to receive any *Jencks* or *Giglio* material from the government, which is expected to be another voluminous production of documents.

Accordingly, due to the new material recently provided by the government and the expected amount of material still to come, coupled with the myriad, and potentially dispositive

issues, raised with the superseding indictment, a continuance of trial is in the best interest of justice and will allow Mr. Tyson the time to properly review and analyze new material essential to his defense.

> **D. Speedy-Trial and Public-Interest Concerns Do Not Weigh Against an Extension in Any Way, Much Less Outweigh the Ends of Justice Concerns that Necessitate an Extension.**

Additionally, there are no speedy-trial or public-interest concerns that weigh against an extension here. *See* 18 U.S.C. § 3161(h)(7)(A). As to speedy trial, Mr. Tyson, having been fully advised, has waived that issue with respect to this requested extension, and he and his counsel are resolute, for the reasons stated above, in the conviction that such an extension is crucial to mounting an effective defense. *See* Ex. A. As to public interest, this case, though momentous for Mr. Tyson, has garnered little public interest and a delay will not harm the public or the public's perception of the judiciary in any way. That the government took five years to indict Mr. Tyson is similarly indicative of the lack of urgency on this front. And to the extent the court is concerned that the passage of time does affect the public interest in some way, the years of government-caused delays (via delayed indictment, delayed document production, attempting to disqualify counsel, and last-minute superseding indictment), not the few months of extension presently sought by Mr. Tyson, are to blame. Accordingly, as previously stated, there is no reason to deny the continuance and every reason to grant it.

## III.   CONCLUSION

Based on the government's cavalier approach to discovery, their response to the bill of particulars, and the recent superseding indictment, Mr. Tyson would be prejudiced if he was required to go to trial on February 18, 2020. Each of the government's actions, alone, and most certain collectively, create a number of material issues that bare on Mr. Tyson's due process rights.

There are no speedy trial concerns here, and an extension will not harm the public interest in any way.

Thus, for good cause shown, Mr. Tyson respectfully requests that this Court grant this Motion and continue the trial date until on or about May 4, 2020, with all pretrial deadlines adjusted accordingly.

Respectfully submitted,

/s/ Chris N. Georgalis
Christos N. Georgalis (OH: 0079433)
Edward Fadel (OH: 0085351)
**Flannery | Georgalis, LLC**
1375 E. 9th St., 30th Floor
Cleveland, OH 44114
Telephone: (216) 367-2095
Email: chris@flannerygeorgalis.com

*Attorney for Defendant Kenneth Tyson*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2020, a copy of the foregoing was filed electronically via email to nextgenfilings@ohnd.uscourts.gov, in accordance with United States District Court Northern District of Ohio General Order No. 2020-02.  Notice of this filing will be sent to all parties via email.  Parties should be able to access this filing through the Court's new NextGen CM/ECF filing system on Monday, February 10, 2020.

/s/ *Chris N. Georgalis*
Christos N. Georgalis

*Attorney for Defendant Kenneth Tyson*