IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:18-CR-00708 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| KENNETH TYSON, | ) | GOVERNMENT'S BRIEF IN SUPPORT |
| | ) | OF U.S.S.G. § 2J1.2 |
| Defendant. | ) | |

The United States of America, by and through the undersigned counsel, hereby files this brief in support of its objections to the Presentence Investigation Report filed on October 19, 2020. For the reasons discussed below, the government respectfully submits that this Court should apply U.S.S.G. § 2J1.2 to determine Defendant Kenneth Tyson's ("Tyson") base offense level at sentencing.

I. BACKGROUND

On November 21, 2018, Tyson was charged in a five-count Indictment with Conspiracy to Commit Bribery and Honest Services Fraud, 18 U.S.C. § 371 (Count 1), Honest Services Wire Fraud ("HSWF"), 18 U.S.C. §§ 1343, 1346, and 2 (Counts 2, 3, and 4); and Bribery (Count 5). (Doc. 1: Indictment, PageID 1). The Indictment alleged, in detail, that Tyson, a Property Specialist with the Cuyahoga County Land Reutilization Corporation ("CCLRC"), M.S., M.R., and others, engaged in a conspiracy to commit honest services fraud and bribery, when Tyson solicited and accepted bribes from M.R. (in the form of home repair and contractor services valued at approximately $6,700) in exchange for Tyson arranging to have M.R. added to the CCLRC qualified demolition contractor list. Being added to the CCLRC qualified demolition contractor list allowed M.R. to bid on and be awarded CCLRC demolition jobs, including a

demolition job valued at approximately $32,355. The Indictment further alleged that Tyson caused three specific wire communications to be transmitted for the purpose of executing his scheme and also committed the substantive offense of bribery.

On February 5, 2020, a grand jury returned a five-count Superseding Indictment, charging Tyson with the same statutory violations identified in the Indictment based on modified substantive grounds. (Doc. 106: Superseding Indictment, PageID 1186). On April 14, 2020, after extensive negotiations, the government filed a one-count Supplemental Information, charging Tyson with making a false, fictitious, and fraudulent statement, in violation of 18 U.S.C. § 1001(a)(2). (Doc. 117: Supp. Information, PageID 1244). The Supplemental Information alleges that on or about October 10, 2018, Special Agents with HUD-OIG and SIGTARP ("the Special Agents") interviewed Tyson at his home in connection with an investigation into his activities in connection with his position at CCLRC. (*Id.*, ¶¶ 1, 3). During this interview, Tyson told the Special Agents that M.R., a former contractor with CCLRC, had never done any work for Tyson personally, when in fact Tyson knew that M.R. had arranged to have work done at Tyson's house. (*Id.*, ¶ 4). Tyson also told the Special Agents that he paid the plumber who installed the waterline at his home in Cleveland Heights, when in fact, Tyson knew that M.R. had arranged to have the plumber install the waterline, and Tyson never paid that plumber or M.R. for the work. (*Id.*). As a result of Tyson's false statements, the Special Agents had to perform additional investigation, as discussed in further detail below. (*Id.*, ¶ 5).

The parties subsequently filed a joint notice of intent to plea and a plea agreement. (Doc. 118: Joint Notice, PageID 1248). As part of the plea agreement, Tyson admitted to the following as part of the factual basis:

    a.    From in or around June 2018, through in or around December 2018, the United States Department of Housing and Urban Development, Office of Inspector General ("HUD-OIG"), the Office of the Special Inspector General

for the Troubled Asset Relief Program ("SIGTARP"), and the Federal Bureau of Investigation ("FBI"), all of which are part of the executive branch of the Government of the United States, acting in a matter within their jurisdiction, were investigating Defendant in connection with his position at the Cuyahoga County Land Reutilization Corporation ("Land Bank").

      b.      During this same period, a Federal Grand Jury sitting in the Northern District of Ohio was conducting a criminal investigation, pursuant to its powers as set forth under Rule 6 of the Federal Rules of Criminal Procedure, into the activities of Defendant.

      c.      On or about October 10, 2018, Defendant was interviewed at his home in the Northern District of Ohio, Eastern Division, by Special Agents with HUD-OIG and SIGTARP.

      d.      During the interview, the Special Agents asked Defendant whether M.R., a former contractor with the Land Bank, had ever done any work for Defendant personally.

      e.      Defendant answered "no," when in truth and in fact, and as Defendant then well knew, M.R. had actually arranged to have work done at Defendant's residence.

      f.      During the interview, the Special Agents asked Defendant whether he paid M.R. for the installation of the waterline at Defendant's residence or whether M.R. completed the work for free.

      g.      Defendant told the agents that he paid the plumber who installed the waterline for the work, when in truth and in fact, and as Defendant then well knew, Defendant never paid the plumber or M.R. for the work performed at his house.

      h.      Defendant knowingly and willfully made these false statements to the Special Agents.

      i.      Defendant's false statements were material to the government's investigation of whether Defendant had illegally accepted services from M.R.

      j.      Defendant's false statements caused HUD-OlG, SIGTARP, and the FBI investigators to perform additional investigation, including subpoenaing additional bank accounts of Defendant to determine whether he actually paid the contractors, and obtaining a search warrant for M.R.'s cell phone to determine whether M.R. was ever at Defendant's home.

(Doc.118-1: Plea Agreement, PageID 1256-57).

United States Pretrial & Probation filed an initial PSR on June 25, 2020. (Doc. 119: PSR, PageID 1261). In that PSR, Pretrial used U.S.S.G. § 2J1.2 to calculate Tyson's total offense level of 12. (*Id.*, ¶¶ 21-30). In response to Tyson's objections, Pretrial issued a revised PSR on October 19, 2020, in which it used U.S.S.G. § 2B1.1 to calculate Tyson's total offense level of 4. (Doc. 124: PSR, PageID 1288, ¶¶ 21-29). Because of the ongoing dispute over the proper guidelines section, the parties have requested the opportunity to brief the issue for this Court prior to Tyson's sentencing. (*See* Doc. 123: Joint Mot. to Continue, PageID 1284).

## II. ARGUMENT

### A. Section 2J1.2 is the Appropriate Guidelines Provision

The Sentencing Guidelines provide that either § 2J1.2 or § 2B1.1 be used to calculate guidelines for a violation of 18 U.S.C. § 1001. The government asserts that the initial PSR correctly found that the appropriate section to use in this case is § 2J.1.2, because § 2J1.2 is specifically outlined for obstruction related offenses. *See, e.g.*, *United States v. Alatrash*, 460 F. App'x 487 (6th Cir. 2012) (applying § 2J1.2 because the offense conduct involved obstruction of justice, specifically false statements made to FBI agents regarding an investigation into an illegal bribery and kickback scheme); *United States v. Khoury*, N.D. Ohio, No. 1:13CR393 (applying § 2J1.2 where defendant's false stated caused DEA investigators to perform additional investigation); *United States v. Hawkins*, 185 F. Supp. 3d 114 (D.D.C. 2016) (applying § 2J1.2 where count of conviction established obstruction of justice offenses, specifically that defendant, in making false statements, "clearly intended to 'prevent,' 'hinder,' and 'delay' the communication of the truthful information he had"); *United States v. Ochoa*, 291 F. App'x 265 (11th Cir. 2008) (affirming district court's application of cross reference); *United States v. Pirani*, 406 F.3d 543 (8th Cir. 2005) (applying § 2J1.2 where defendant made false statements to FBI during course of government investigation and he knew of that investigation); *United States*

4

*v. Seifert*, 90 F. App'x 175 (7th Cir. 2004) (affirming three-level upward adjustment for substantial interference with the administration of justice where parties stipulated to § 2J1.2); *United States v. Kurtz*, 237 F.3d 154 (2d Cir. 2001) (applying § 2J1.2 where "obstruction-of-justice guidelines more aptly covered [defendant's] conduct").

While Appendix A provides some guidance as to when the use of § 2J1.2 may be appropriate (*e.g.*, when the statutory maximum term of eight years' imprisonment applies), it does not govern *all* circumstances. Section 2B1.1(c) describes the relevant cross references to consider. Specifically, § 2B1.1(c)(3) states,

> If (A) neither subdivision (1) nor (2) of this subsection applies; (B) the defendant was convicted under a statutes proscribing false, fictitious, or fraudulent statements or representations generally (*e.g.*, 18 U.S.C. § 1001 . . .); and (C) the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two (Offense Conduct), apply that other guideline.

Application Note 17 further describes the purpose of these cross references:

> Subsection (c)(3) provides a cross reference to another guideline in Chapter Two (Offense Conduct) in cases in which the defendant is convicted of a general fraud statute, and the count of conviction establishes an offense involving fraudulent conduct that is more aptly covered by another guideline. Sometimes, offenses involving fraudulent statements are prosecuted under 18 U.S.C. § 1001, or a similarly general statute, although the offense involves fraudulent conduct that is also covered by a more specific statute.

U.S.S.G. § 2B1.1. App. Note 17. Thus, § 2J1.2 can be applied as a cross-reference, even where Appendix A does not apply.

The U.S. Sentencing Commission recognized that the cross-reference would be used to "reconcile the nature of the offender's conduct with the offense of conviction." *Ochoa*, 291 Fed. at 267. The Guidelines observe in the "Background" commentary that

> [b]ecause federal fraud statutes often are broadly written, a single pattern of offense conduct usually can be prosecuted under several different code sections, as a result of which the offense of conviction may be somewhat arbitrary. Furthermore, most fraud statutes cover a broad range of conduct with extreme variation in severity. The specific offense characteristics and cross references contained in this guideline are designed with these considerations in mind.

5

U.S.S.G. § 2B1.1.

Here, the elements of § 2B1.1(c)(3) are met because neither subdivision (1) nor (2) apply, Tyson was convicted under 18 U.S.C. § 1001, and the conduct set forth in the supplemental information and plea agreement establishes an offense specifically covered by another guideline in Chapter Two: § 2J1.2, Obstruction of Justice. The Sixth Circuit appears to have taken the majority position that courts may look only to the charging document to determine whether defendant's conduct is covered by another guidelines provisions. *See United States v. Ballard*, 850 F.3d 292, 295 (6th Cir. 2017) ("The only offense conduct we look at is what's described in the indictment or stipulated in the plea agreement."). Other circuits, however, consider more. *See Hawkins*, 185 F. Supp. 3d at 118-24 (considering both the offense conduct in the Information and Statement of the Offense); *Ochoa*, 291 F. App'x at 268 (rejecting defendant's reliance on *United States v. Genao*, 343 F.3d 578 (2d. Cir 2003) and noting there is no controlling precedent from the Supreme Court resolving the issue).

Here, the information and plea agreement sufficiently establish Tyson's obstruction. Tyson's conduct in lying to law enforcement was done with the intent to obstruct justice and did in fact obstruct justice. The Special Agents were investigating whether Tyson accepted services from M.R. in the course of his employment at CCLRC in exchange for helping M.R. get on the list to bid on demolition jobs with CCLRC. Specifically, when interviewing Tyson at his home on October 10, 2018, the Special Agents asked whether M.R. did or paid for work that was completed at Tyson's residence, including the installation of a waterline. Tyson lied to the agents, stating that M.R. did not complete or pay for work at Tyson's residence. Tyson also stated that he himself paid for the installation of the waterline in cash, when in fact, Tyson never exchanged money with M.R. or any other subcontractor. Tyson's intent in making these false statements was clearly to obstruct the investigation into whether he accepted the bribe, and

6

Tyson was aware of the investigation based on the fact that two federal agents showed up at his house at 7:00 a.m. to ask him these questions. His only motivation to lie was to impede the investigation.

Further, after Tyson lied to the Special Agents on October 10, 2018, they engaged in substantial additional investigative measures to attempt to corroborate Tyson's statements. More specifically, it was necessary for the agents to interview all of the subcontractors who performed work at Tyson's house to verify whether they had actually performed the work and whether Tyson had actually paid them for their services. With Tyson falsely claimed he paid for these services in cash, the agents had to investigate Tyson's finances in detail. These measures included, but are not limited to, multiple trips taken by SIGTARP agents in New York to conduct interviews and other investigation work, additional witness interviews, and the preparation and service of numerous trial subpoenas. The agents then had to review and analyze all of the records obtained by trial subpoena, which included voluminous financial records.

      B.  <u>If this Court Applies Section 2B1.1, the Total Offense Level Should Be 10</u>

If this Court finds that § 2B1.1 applies, the adjusted offense level should be increased to a 12, resulting in a total offense level of 10. Section 2B1.1 provides that the base offense level shall be increased based on the loss associated with the crime. Here, loss can be calculated in two ways. First, by adding up the amount of free services Tyson allegedly received from M.R. These services were the basis for Tyson's lie and are therefore relevant to the loss calculation. This amount is $6,765. Second, loss can be calculated by looking at the value of the contract that M.R. received in exchange for providing Tyson with free services. The amount of that contract is $35,284. The commentary to § 2B1.1 provides that loss "is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1. App. Note 3(A). Therefore, the offense level should be increased by 4 levels, pursuant to § 2B1.1(b)(1)(C), based on the intended loss in this case.

In addition, even if this Court finds that § 2J1.2 is not applicable, an enhancement under U.S.S.G. § 3C1.1 should be applied because Tyson's false statements "significantly obstructed or impeded the investigation." See, § 3C1.1 App. Note 4(G).

## III. CONCLUSION

For the aforementioned reasons, the government respectfully submits that this Court apply U.S.S.G. § 2J1.2 to determine Defendant Kenneth Tyson's base offense level at sentencing.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By: /s/ Chelsea S. Rice
Chelsea S. Rice (OH: 0076905)
Vanessa V. Healy (OH: 0092212)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3752/3652
(216) 522-8355 (facsimile)
Chelsea.Rice@usdoj.gov
Vanessa.Healy@usdoj.gov