IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:18-CR-708 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANT'S BRIEF IN RESPONSE** |
| KENNETH TYSON, | ) | **TO GOVERNMENT'S ARGUMENT** |
| | ) | **FOR U.S.S.G. § 2J1.2** |
| Defendant. | ) | |

Defendant Kenneth Tyson ("Kenneth") submits this brief in response to the government's errant contention that § 2J1.2 of the United States Sentencing Guidelines governs the computation of his base offense level in this case. In actuality, as shown in Kenneth's November 16, 2020 brief, as further discussed below, and as found by the probation department, the text of the Guidelines and case law make plain that calculation of Kenneth's sentencing range begins and ends with § 2B1.1, resulting in a base level of 6 and total adjusted offense level of 4.

### I.   PRELIMINARY STATEMENT

The government's brief is steeped in error from beginning to end. Right off the bat, in the background section, the government gets off track by narrating the details of the defunct indictment and superseding indictment. But those allegations have *nothing* to do with the issues at hand. First, those indictments will be dismissed primarily because many of the core allegations contained therein are baseless. Second, even if that were not the case, the law is clear that trial courts may only look to the conduct alleged in the *operative* charging instrument and plea agreement in determining what section of the Guidelines applies for purposes of calculating a base offense level.

The argument section of the government's brief fares no better. The portion dedicated to the argument that § 2J1.2 should apply is roughly divisible into three sections. First, an initial

string cite of readily distinguishable cases. Second, a concession that the Statutory Index found in Appendix A of the Guidelines does not allow for application of § 2J1.2 in this case. And last, an argument that the § 2B1.1(c)(3) cross reference applies, even though that cross reference requires that the "conduct set forth in the count of conviction establish[] an ***offense specifically covered by another guideline***" and the government never even identifies *what* "specific[]" other "offense" is supposedly established here.

From there the government fleetingly delves into issues outside the scope of the briefing mandate issued by the Court, but its analysis of these issues is, if possible, even more deficient. First, it argues that, if § 2B1.1 applies, Kenneth should be subject to a substantial increase in his offense level based on the amount of loss at issue, even though the case *involves no loss*. And the argument section concludes with a single-sentence, baseless assertion—unsupported by any argument or case law—that an additional enhancement should be applied because Kenneth supposedly "obstructed or impeded" the investigation into his offense.

Because all of these arguments fall woefully short and because case law and the text of the Guidelines are clear, this Court, like the probation department, should begin and end its offense-level computation with Guidelines § 2B1.1.

II. <u>LAW AND ARGUMENT</u>

    A. <u>The Government's Arguments for Application of § 2J1.2 Are Meritless.</u>

As explained in Kenneth's November 16, 2020 brief to this Court, Guidelines § 1B1.2(a) provides that the first step in applying the Guidelines to a specific case is to "determine the offense guideline section in Chapter Two (Offense Conduct) applicable to the offense of conviction" by referring to the Statutory Index, found in Guidelines Appendix A. Kenneth argued there that the Statutory Index does *not* allow for application of § 2J1.2 to an 18 U.S.C. § 1001 offense like this

one. And the government now concedes the point. Gov't 11/30/20 Brief at 1 ("the government does not contend that § 2J1.2 applies based on . . . Appendix A"); Gov't 11/13/20 Brief at 5. The Statutory Index does *not* permit application of § 2J1.2 here.

Having conceded that point, the government is left with contending that the cross reference found in § 2B1.1(c)(3) provides a back door through which § 2J1.2 may still be applied. As discussed in detail in Kenneth's November 16, 2020 brief, that argument, too, is meritless. The § 2B1.1(c)(3) cross reference provides that a sentencing court may resort to a guideline other than § 2B1.1 itself only where, among other things, "the conduct set forth in the count of conviction establishes an offense specifically covered in another guideline in Chapter Two." As argued in Kenneth's previous brief, and as the government now concedes, in determining what constitutes the at-issue "offense conduct," a court may look *only* to "what's described in the indictment or stipulated in the plea agreement." *United States v. Ballard*, 850 F.3d 292, 295 (6th Cir. 2017); *see also* Gov't 11/13/20 Br. at 6 (citing *Ballard*). Here, an information, not an indictment, forms the basis of the plea. And the conduct set forth in the information and plea agreement does not establish one of the offenses "specifically covered" by § 2J1.2. Those "specifically covered" offenses— again, as discussed in Kenneth's previous brief—are listed in the commentary to § 2J1.2.

At bottom, then, Kenneth's argument regarding the cross reference is straightforward and irrefutable. For § 2J1.2 to apply, the conduct set forth in the information and stipulated to in the plea agreement must "establish" an offense under one of the statutory provisions referenced in the commentary to § 2J1.2. It does not, and so § 2J1.2 cannot apply, even via the § 2B1.1(c)(3) back door. The government never addresses this argument head on. Instead, it limits itself to providing a string cite of cases in which courts did apply § 2J1.2 via the § 2B1.1(c)(3) cross reference, Gov't 11/13/20 Br. at 4-5, and a two-paragraph argument that the conduct alleged in the information and

3

plea agreement constitutes generic "obstruction of justice," *Id.* at 6-7. Neither argument is availing.

Regarding the string cite, all of the cases cited therein are readily and fundamentally distinguishable from this one. The government's reliance on *United States v. Khoury,* Case No. 1:13-CR-393 (N.D. Ohio) (Gwin, J.), for example, is badly misplaced. As explained in Kenneth's November 16, 2020 brief, the indictment in that case, unlike in Kenneth's case, alleged that the defendant had acted "with the intent to corruptly obstruct, influence, and impede and to attempt to obstruct, influence and impede the Federal Drug Offense Investigation" at issue. *Id.* at ECF #1, Page ID #6; *see also* 11/16/20 Br. at 14. Thus, the "conduct set forth in the count of conviction establish[ed] an offense specifically covered" by § 2J1.2, namely, a violation of 18 U.S.C. § 1505, one of the offenses listed in the comments to § 2J1.2. And in *United States v. Alatrash*, 460 F. App'x 487 (6th Cir. 2012)—the only other intra-circuit case the government cited—the court *did not even discuss* the prerequisites for application of § 2J1.2. *See id.* at 492. Indeed, Judge Lioi discussed *Alatrash* in *United States v. Phillips*, 1:11-CR-180, concluding that "the issue that is now before this Court [whether the cross reference in § 2B1.1(c)(3) supports the application of § 2J1.2 to a generic 18 U.S.C. § 1001 case] was not presented in [*Alatrash*]." *Phillips* Sentencing Tr. (attached to 11/16/20 Br.) at 13:13-19.

The government's reliance on extra-circuit cases is similarly inapt and misguided. By way of example only, consider *United States v. Kurtz*, 237 F.3d 154, 156 (2d Cir. 2001). There, the defendant held himself out as an attorney for six years and represented a wide variety of clients including clients in "more than a dozen criminal cases." *Id.* at 155. But in reality, he was not barred and had not even attended law school. *Id.* The court concluded that § 2J1.2 applied given

4

the acutely obstructive "nature of Kurtz's conduct, which deprived defendants in criminal cases of their constitutional rights to be represented by bona fide attorneys." *Id.* at 156.

*United States v. Seifert*, 90 F. App'x 175 (7th Cir. 2004), is similarly worlds apart from the case at bar. There, the parties <u>stipulated to the applicability of § 2J1.2</u>, which was only logical given the terroristic nature of the offense.[1] *Id.* at 176. The Guidelines' Statutory Index explicitly provides that § 2J1.2 applies "when the statutory maximum term of eight years' imprisonment applies because the matter relates to international terrorism or domestic terrorism." *See also, e.g.*, *United States v. Hatley*, 717 F. App'x 457, 463 (5th Cir. 2018) ("For violations [of 18 U.S.C. § 1001] having a statutory maximum of eight years (violations relating to terrorism or sex offenses), Section 2J1.2 applies."). Thus, the cross reference set forth in § 2B1.1(C)(3) never even came into play in *Seifert*. This is in stark contrast to Kenneth's case, where the government has already conceded that § 2J1.2 *cannot* apply via the Statutory Index, and thus the only way by which § 2J1.2 can possibly come into play is via the § 2B1.1(c)(3) cross reference. *See supra* at 3. Thus, *Seifert*—and the government's reliance upon it—is nothing more than an irrelevant distraction.[2]

The only other argument the government makes in its November 13 brief with respect to the § 2B1.1(c)(3) cross reference is the argument that § 2J1.2 should apply via the cross reference because Kenneth supposedly "obstruct[ed] justice." Gov't November 13, 2020 Br. at 6. But the

---

[1] In *Seifert*, shortly after September 11, 2001, the defendant contacted the FBI and informed agents that a Middle Eastern man had given him a disk from which to recover data. *Id.* at 176. The defendant claimed that the recovered data "generated an image of an American flag which, when decrypted, revealed Arabic text urging terrorists to drive fuel trucks into schools, churches, synagogues and shopping malls." *Id.* In truth, the defendant himself created this disk. *Id.*

[2] The government's other out-of-circuit cases are hardly any better. *See, e.g.*, *United States v. Ochoa*, 291 F. App'x 265 (11th Cir. 2008) (confidential informant fabricated an entire robbery plan as well as the possession of firearms in an attempt to extract money from the government as payment for the information).

government fails to link this supposed generic obstruction to a violation of *any* statute, let alone one "specific[ally]" covered by § 2J1.2, as the § 2B1.1(c)(3) cross reference requires. Clearly, the government fails to identify the § 2J1.2 statutory violation implicated because *there isn't one*.[3]

Further, even if this argument were not meritless on its face, still the government could not succeed. The government urges that Kenneth "did in fact obstruct justice" because "after Tyson lied," the federal agents "engaged in substantial additional investigative measures to attempt to corroborate Tyson's statements." Gov't 11/13/20 Br. at 6, 7. This is a red herring. Key to any finding of obstruction is a defendant's specific intent. *See* 11/16/20 Br. at 10-14. And the government's purported follow-up steps are irrelevant to determining that. Moreover, the "substantial additional investigative measures" the government claims to have taken are, to put it mildly, dubious. These "additional . . . measures" supposedly included interviews with the contractors who performed work at Kenneth's house. But the defense's own interviews have revealed that in fact the government did *not* solely conduct Kenneth-related interviews as claimed (in fact, one was not interviewed by the government at all).[4] And, despite numerous requests from the defense, the government has consistently failed to produce any memorandums or records of the supposed interviews.

---

[3] In its later brief—filed November 30, 2020—the government *finally* identifies a "specific offense" statute that it contends Kenneth violated: 18 U.S.C. § 1503. But that statute, like 18 U.S.C. § 1505, requires that the offender act "corruptly," and as explained in detail in Kenneth's previous brief, this specific-intent requirement is not satisfied here. *See* 11/16/20 Br. at 9-14. Even more fundamentally—and dispositively—the Supreme Court itself held in *United States v. Aguilar*, 515 U.S. 593 (1995), on facts analogous to these, that "uttering false statements to an investigating officer" cannot by itself constitute a violation of § 1503. *Id.* at 600 (affirming reversal of § 1503 conviction where defendant lied to investigating FBI agents: "We do not believe that uttering false statements to an investigating agent . . . is sufficient to make out a violation of the catch-all provision to § 1503.").

[4] *See infra* at 12-13 for further detail.

In short, then, the government's argument for application of § 2J1.2 is utterly unpersuasive. Just as the probation department did, this Court should reject it.

### B. The Government's Loss-Amount Argument Has No Basis in Law or Fact.

The Court, upon request of the parties, ordered briefing limited to the threshold issue of whether § 2B1.1 or § 2J1.2 applies. But, the government's brief wanders far beyond this mandate, arguing that, if the Court relies on § 2B1.1 rather than § 2J1.2, Kenneth's offense level should "be increased by 4 levels, pursuant to § 2B1.1(b)(1)(C)" because the loss purportedly caused by Kenneth's offense allegedly exceeded $15,000. Gov't 11/13/20 Br. at 7. Given this approach by the government, Kenneth will briefly address this issue as well. The short answer is that the government does not back up this argument with any case law or even with any logical reasoning. It is entirely frivolous. And the probation department agrees: There simply was no loss here. *See* 10/19/20 PSR, ECF # 124, at ¶¶ 20-29.

More specifically, the government argues that the loss should be calculated either as $6,765—the supposed value of the home-improvement services previously received by Kenneth— or as $35,284—the amount of the alleged contract that M.R. received. *Id.* But these "facts" (such as they are) and figures come from the washed-up indictments, not from the operative information. Guidelines § 1B1.3(a)(1) limits the consideration of such dismissed conduct to acts and omissions "that occurred during the commission of the <u>offense of conviction</u>, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. (Emphasis added). Though the phrase "offense of conviction" is not defined by the Guidelines, the Sixth Circuit has held "that the term 'offense of conviction'[5] describes only the precise conduct constituting the crime for which the defendant was convicted, and does not include non-offense relevant

---

[5] Not unlike the term "count of conviction." *See supra* at 3.

conduct." *United States v. Rebmann*, 321 F.3d 540, 544 (6th Cir. 2003). Thus, Kenneth's only "offense of conviction" is the false statement he made in violation of 18 U.S.C. § 1001 on October 10, 2018. Neither the home-repair services nor—even more outlandishly—the contracts obtained by M.R. occurred as part of Kenneth's false statement to the agents, nor did they occur "in preparation for" or "in the course of attempting to avoid detection or responsibility for" the false statements. Accordingly, the law is clear that these "loss" amounts are not attributable to Kenneth's offense of conviction.

The government's loss-amount argument is bogus for yet more reasons. The Sixth Circuit has explained that "the Sentencing Guidelines import the legal concept of a causal relationship between the defendant's conduct and the determined loss." *United States v. Rothwell*, 387 F.3d 579, 583 (6th Cir. 2004). "Causation includes two distinct principles, cause in fact, or what is commonly known as 'but for' causation, and legal causation." *Id*. The government thus has the burden to establish both cause in fact and legal causation by a preponderance of the evidence. *Id*. at 582–83.

Here, *neither* type of causation has been—or can be—established, *i.e.*, Kenneth's false statement to the agents did not cause either "loss." Indeed, even the defunct superseding indictment makes clear that both "losses" occurred *years before* the offense of conviction. Superseding Indictment, ECF #106, at ¶¶ 30-53. Thus, we can say with metaphysical certainty that Kenneth's false statement did not cause either loss. Indeed, the government admits this fundamental and fatal flaw—and gets things precisely backwards—when it argues that the water line repair work "services" (which comprised a portion of the supposed $6,765 "loss") "were the basis for Tyson's lie and are therefore relevant to the loss calculation." Gov't 11/13/20 Br. at 7. To attribute loss to Kenneth for sentencing purposes, the law plainly requires that Kenneth's false statement caused

the "loss," *i.e.*, the home repairs. But the government's argument is the opposite: the home repairs caused the false statement.

Kenneth's case is analogous to *United States v. Griffith*, 115 F. Supp. 3d 726 (S.D. W. Va. 2015). There, defendant Griffith lied to IRS agents regarding his knowledge of any cash kickback payments accepted by him in the past. *Id.* at 729-730. The court held that Griffith, who pled guilty to making a false statement in violation of 18 U.S.C. § 1001, was not responsible, for sentencing purposes, for loss attributable to a kickback scheme involving payments made by vendors years prior. *Id* at 732. Further, the court held the kickback scheme and its associated loss were not relevant conduct or part of the same course of conduct or plan as Griffith's offense of conviction, because his offense occurred on the specific date that he made a false statement to IRS agents, the kickback scheme had terminated roughly four years prior to that date, and, although Griffith's false statement involved denial of his receipt of kickbacks, the kickback scheme was not part of or related to the substantive offense of conviction. *Id.* at 735. Here, just like in *Griffith*, Kenneth made a false statement concerning transactions that had occurred years prior, and the years-later false statement cannot somehow magically be deemed the cause of the earlier "loss."

Finally, and even more fundamentally, neither the $6,765 sum nor the $35,284 sum floated by the government constitutes a "loss"—actual, intended, or otherwise—under the Guidelines. Indeed, Application Note 3 to § 2B1.1 expressly limits "loss" to "pecuniary *harm*." (Emphasis added). The government's $6,765 is the supposed value of the home-repair services Kenneth received. But the moribund indictments do *not* allege that the contractors who performed these services were stiffed. To the contrary, they allege that Kenneth's purported co-conspirator, M.R., paid the bills. Likewise, the $35,284 figure represents the value of the contracts purportedly awarded to M.R., but the indictments never allege that M.R. failed to perform under the contracts

9

or that the Land Bank suffered "pecuniary harm." In short, there was no loss here, let alone a loss caused by Kenneth's false statement. The government's argument to the contrary is absurd.[6]

### C. The Government's Request for an Obstruction Enhancement Is Baseless.

Kenneth and the probation department are also in agreement that no enhancement for obstruction should be applied in this case. The government's contrary "argument"—that Kenneth should receive an enhancement under Guidelines § 3C1.1 for obstruction of justice—is, quite literally, baseless. That is, the government simply makes this assertion in a single sentence without providing any argument—legal, logical, factual, or otherwise—in support.

Right off the bat, this issue fails because the government has failed to brief it and therefore has waived it. *E.g.*, *United States v. Blake-Saldivar*, 505 F. App'x 400, 404 n.1 (6th Cir. 2012) (argument "raised" but "not actually briefed" was "waived"). "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (internal quotation marks omitted; alteration in original).

Even if the government had not waived this issue, still the § 3C1.1 enhancement would not apply to Kenneth in light of the plain language of that Guidelines section. The Guideline begins by stating that the enhancement is only applicable if, among other things, "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice **with respect to the investigation, prosecution, or sentencing of the instant offense of conviction**."

---

[6] Though the government's brief does not raise the argument, for the sake of completeness the defense notes that the Sentencing Guidelines make clear that the cost of the investigation may not be used as a proxy for loss. U.S.S.G. § 2B1.1 App. Note 3(D)(ii) ("Loss shall not include . . . [c]osts to the government of, and costs incurred by victims primarily to aid the government in, the prosecution and criminal investigation of an offense.").

10

(Emphasis added). Here, of course, the "instant offense of conviction" is the violation of 18 U.S.C. § 1001 committed by Kenneth when he made the false statement to the agents during the early morning interview at his home. Accordingly, for the § 3C1.1 enhancement to apply, Kenneth would have had to have committed an obstructive act "with respect" to the false statement upon which the § 1001 conviction is based. In other words, he would have had to have destroyed evidence of the false statement, perjured himself regarding the false statement, etc. There are *no* facts here to support any such finding.

The § 3C1.1 enhancement is inapplicable for another, closely related reason. Any enhancement premised on the false statement underlying Kenneth's 18 U.S.C. § 1001 conviction would amount to impermissible double counting. "[T]he established rule in this circuit is that impermissible double counting occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Sabino*, 307 F.3d 446, 451 (6th Cir. 2002) (internal quotation marks omitted). In other words, Kenneth's false statement to the agents cannot be the basis *both* for the § 1001 conviction itself *and* for the § 3C1.1 enhancement.[7]

Finally, Application Note 5(B) to § 3C1.1 explicitly provides that "making false statements, not under oath, to law enforcement officers" "ordinarily do[es] *not* warrant application of" the § 3C1.1 enhancement. (Emphasis added). This, of course, is precisely the fact pattern facing Kenneth here.

---

[7] This is *not* to say that the guidelines offense level for an 18 U.S.C. § 1001 offense is never subject to a § 3C1.1 enhancement. But it is to say that such an enhancement can only apply to a § 1001 offense when the enhancement is premised on *different* conduct. *See, e.g.*, *United States v. Cortez*, 557 F. App'x 596, 601 (8th Cir. 2014) (§ 3C1.1 enhancement appropriately applied to 18 U.S.C. § 1001 conviction where defendant made the false statement that was the basis for the § 1001 offense and then perjured himself by lying about that false statement at trial).

Application Note 5(B) does provide an exception to this rule where "Application Note 4(G) . . . applies." *Id.* Note 4(G), in turn, states that the § 3C1.1 enhancement *is* appropriate where the defendants "provid[ed] a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." But Note 4(G) does not apply on these facts for multiple reasons.

First, if, as is the case here, the government has obtained the facts from another source, then a defendant's failure to answer truthfully does not "significantly obstruct[ ] or impede[ ]" the investigation. U.S.S.G. § 3C1.1, App. Note 4(G). The information the agents sought to obtain from Kenneth—and about which he made a false statement—was already known to the government through M.R. *before* Kenneth's interview was ever conducted. The Sixth Circuit examined a similar situation in *United States v. Williams*. Analyzing the case, the court found:

> It is unlikely that defendant's lies impeded the investigation of this case because the . . . agents already knew the true nature of the relationship between Freeman and defendant from Freeman's full cooperation as corroborated by the agents' surveillances and tape recordings. . . . Indeed, it seems that the government's real argument is not that defendant succeeded in misleading anyone, but that his failure to confess and cooperate with the government when first approached <u>required the government to continue an investigation that might otherwise have been shortened</u>. This argument is not supported by any provision in section 3C1.1, and the government cites no authority for it. . . . Failed attempts to shift the investigative searchlight elsewhere are not covered by the guidelines.

*United States v. Williams*, 952 F.2d 1504, 1515–16 (6th Cir. 1991).

Additionally, the defense's own investigation suggests that, any government representations to the contrary notwithstanding, the government did nothing more post-interview than engage in routine trial preparation. And, indeed, one witness whom the government claims to have interviewed as a result of Kenneth's false statement indicated that he never spoke with the government. Moreover, several additional witnesses indicated that, when they were interviewed by the government, they were not asked about Kenneth, nor did they even know Kenneth. In short, any

12

government assertion of substantial resources unnecessarily expended as a result of Kenneth's false statement are a ruse. For multiple reasons, then, the § 3C1.1 enhancement does not apply here.

### III.   CONCLUSION

Application of § 2J1.2 in Kenneth Tyson's case, of a "loss amount" enhancement, or of an obstruction enhancement would all constitute reversible legal error in this case. For all of the reasons set forth above as well as in his November 16, 2020 brief, Defendant Kenneth Tyson respectfully requests that this Court apply § 2B1.1 to calculate his offense level, consistent with the U.S. Probation Office, yielding an initial base offense level of 6 prior to a two-level acceptance-of-responsibility deduction.

Respectfully submitted,

/s/ *Chris N. Georgalis*
Christos N. Georgalis (OH: 0079433)
Edward Fadel (OH: 0085351)
**Flannery │ Georgalis, LLC**
1375 E. 9th St., 30th Floor
Cleveland, OH 44114
Telephone: (216) 367-2095
Facsimile: (216) 367-2095
Email: chris@flannerygeorgalis.com
Email: efadel@flannerygeorgalis.com

*Attorneys for Defendant Kenneth Tyson*

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2020, this Defendant's Brief in Response to Government's Argument for U.S.S.G. § 2J1.2 was filed via the Court's ECF system. Counsel of record will receive notice of, and be able to access, the filing via the ECF system.

    /s/*Chris Georgalis*

Chris Georgalis

*An Attorney for Defendant Kenneth Tyson*