# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:18-CR-708 |
| Plaintiff, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| v. | ) ) ) | **DEFENDANT'S REPLY IN SUPPORT** |
| KENNETH TYSON, | ) ) | **OF APPLYING U.S.S.G. § 2B1.1** |
| Defendant. | ) | |

In his opening brief filed November 16, 2020, as well as in his December 16, 2020 response to the government's parallel brief, Defendant Kenneth Tyson ("Kenneth") explained that both the text of the relevant Sentencing Guidelines as well as case law make clear that the substantive portions of § 2B1.1 of the Guidelines—not § 2J1.2—control the calculation of Kenneth's Guidelines offense level. The United States Probation Office reached this same conclusion. The government feebly protests to the contrary, but in doing so it concedes that the Guidelines' Statutory Index does *not* provide for application of § 2J1.2, it defies Sixth Circuit precedent by relying on material outside the governing information and plea agreement, it argues for application of § 2J1.2 via a mechanism that the Supreme Court has squarely held does not apply in these circumstances, and it commits other, equally fatal errors. In short, contrary to the government's wayward argument, the Probation Office is unquestionably correct that § 2J1.2 has no place in this case.

## I.    ARGUMENT

### A.    The Government Concedes that the Guidelines Statutory Index Does Not Provide for Application of § 2J1.2 Here.

As explained in Kenneth's November 16, 2020 brief, Guidelines § 1B1.2(a) says that the first step in applying the Guidelines to a specific case is to "determine the offense guideline section

1

in Chapter Two (Offense Conduct) applicable to the offense of conviction" by referring to the Statutory Index, found in Guidelines Appendix A. Kenneth argued in that brief that the Statutory Index does *not* allow for application of § 2J1.2 to an 18 U.S.C. § 1001 offense like this one. And the government now concedes the point. Gov't 11/30/20 Brief at 1 ("the government does not contend that § 2J1.2 applies based on . . . Appendix A"); Gov't 11/13/20 Brief at 5. The Statutory Index does *not* permit application of § 2J1.2 here.

> B. **Application of the § 2B1.1(c)(3) Cross Reference Is Precluded by Precedent and the Plain Language of that Very Provision.**

Having conceded that the Statutory Index does not allow for application of § 2J1.2 to Kenneth's case, the government is left with only one mechanism by which it might beguile the Court to apply the inapt § 2J1.2—the cross reference found in § 2B1.1(c)(3). Already discussed extensively in earlier briefs, that provision says that a court applying § 2B1.1 pursuant to the Statutory Index's directive may nevertheless apply an "other guideline" if, and only if, "the conduct set forth in the count of conviction establishes an offense specifically covered by" that other guideline. Thus, the cross reference can be used as a back door to application of § 2J1.2 here *only* if the "conduct set forth in the count of conviction" makes out an offense "specifically covered by" § 2J1.2.

As Kenneth has previously pointed out, the government argued for application of § 2J1.2 via the § 2B1.1(c)(3) cross reference but, in its own opening brief, *did not even identify* which "offense specifically covered by" § 2J1.2 was "establishe[d]" by the "conduct set forth in" Kenneth's "count of conviction." *See* Def. 12/16/20 Br., ECF No. 129, at 5-6. But in its opposition to Kenneth's opening brief, it does venture to identify a single "offense" "specifically covered" by § 2J1.2 that is purportedly implicated here. According to the government, Kenneth's conduct

establishes a violation of 18 U.S.C. § 1503—"[i]nfluencing or injuring officer or juror generally."
The government's argument that Kenneth violated § 1503 is, in its entirety, as follows:

> Under § 1503, the government is required to prove that the defendant corruptly obstructed the due administration of justice, knowing there was a pending judicial proceeding. This Court previously defined "corruptly" as "consciousness of wrongdoing." *See United States v. Lee,* No. 1:15CR445 (N.D. Ohio) (R.101: Joint Jury Instructions). Here, Tyson—knowing he was lying to federal agents—made false statements that forced those agents to engage in substantial additional investigative measures. Tyson's intent in making these false statements was clearly to obstruct the grand jury investigation into whether he accepted a bribe from M.R., and Tyson was aware of the investigation based on the fact that two federal agents showed up at his house at 7:00 a.m. to ask him these questions. His only motivation to lie was to impede the investigation and pending grand jury proceedings.

Gov't 11/30/20 Br., ECF No. 128, at 2-3. This argument is meritless for several reasons.

*First*, the government's argument impermissibly relies on purported facts *not* "set forth in the count of conviction" as the cross reference requires. As the government has previously acknowledged, the Sixth Circuit has made clear that, in determining what constitutes the at-issue "offense conduct," a court may look *only* to "what's described in the indictment or stipulated in the plea agreement." *United States v. Ballard*, 850 F.3d 292, 295 (6th Cir. 2017); *see also* Def. 11/16/20 Br., ECF No. 127, at 6. But the government argues that Kenneth's conduct amounted to a violation of § 1503 because "Tyson's intent in making these false statements was clearly to obstruct the grand jury investigation into whether he accepted a bribe from M.R., and Tyson was aware of the investigation based on the fact that two federal agents showed up at his house at 7:00 a.m. to ask him these questions. His only motivation to lie was to impede the investigation and pending grand jury proceedings." Gov't 11/30/20 Br., ECF No. 128, at 3. But these supposed "facts" are bald assertions nowhere to be found in the information or plea agreement. Neither document states that Kenneth intended to obstruct the grand jury; indeed, neither states that Kenneth even *knew* about the grand-jury investigation. Neither document states that any bribe

3

occurred or was planned, nor does either even state that the HUD-OIG and TARP agents arrived at Kenneth's home at 7:00 AM.[1]  The law is clear that none of these "facts"—absent from the controlling documents—may be relied upon here.  Thus the government's argument fails completely for this reason alone.

*Second*, the government's argument also fails because the Supreme Court itself has squarely held that conduct like Kenneth's does *not* constitute a violation of 18 U.S.C. § 1503.  Indeed, the facts in *United States v. Aguilar*, 515 U.S. 593 (1995), were far *more* egregious than those in this case.  There, Defendant Aguilar, a sitting federal judge, disclosed a federal wiretap to the target and then lied about it when questioned by the FBI.  Further, there was no doubt but that Aguilar was aware of the ongoing grand-jury investigation when he lied.  Specifically, "[t]he Government support[ed] its argument [that Aguilar had violated § 1503] with a citation to the transcript of the recorded conversation between Aguilar and the FBI agent at the point where Aguilar ask[ed] whether he [wa]s a target of a grand jury investigation.  The agent responded to the question by stating: '[T]here is a Grand Jury meeting.  Convening I guess that's the correct word.  Um some evidence will be heard I'm . . . I'm sure on this issue.'"  *Id.* at 600.

Aguilar was convicted, *inter alia*, of endeavoring to obstruct the due administration of justice in violation of 18 U.S.C. § 1503.  But on appeal, the Ninth Circuit reversed the § 1503 conviction.  The Supreme Court affirmed the reversal.

Citing to the transcript excerpt quoted above, the government had argued that "the defendant made the [false] statements with the intent to thwart the grand jury investigation and not just the FBI investigation."  *Id.*  But the Supreme Court rejected the argument, holding, in words

---

[1] Not only are none of these facts not found in the relevant documents, with the possible exception of the 7:00 AM meeting time, none of the "facts" are even true.

4

directly applicable to Kenneth's case: "We do not believe that uttering false statements to an investigating agent . . . who might or might not testify before a grand jury is sufficient to make out a violation of the catchall provision of § 1503."[2] *Id.* In reaching this conclusion, the Court reasoned as follows:

> [T]he transcript citation relied upon by the Government would not enable a rational trier of fact to conclude that respondent knew that his false statement would be provided to the grand jury, and . . . the evidence goes no further than showing that respondent testified falsely to an investigating agent. Such conduct, we believe, falls on the other side of the statutory line from that of one who delivers false documents or testimony to the grand jury itself. Conduct of the latter sort all but assures that the grand jury will consider the material in its deliberations. *But what use will be made of false testimony given to an investigating agent who has not been subpoenaed or otherwise directed to appear before the grand jury is far more speculative. We think it cannot be said to have the natural and probable effect of interfering with the due administration of justice.*

*Id.* at 601 (emphasis added).

Here, the connection between Kenneth's false statement and the grand-jury investigation is even *more* tenuous than it was in *Aguilar*. In *Aguilar*, after all, it was clear that the defendant knew that the grand-jury investigation was ongoing when he made the at-issue statement. But in Kenneth's case, the Supplemental Information and the Plea Agreement allege only that "a Federal Grand Jury sitting in the Northern District of Ohio was conducting a criminal investigation . . . into the activities of Defendant." *See* Supplemental Information, ECF No. 117, Page Id # 1244. **There is no allegation that Kenneth was even aware of the grand jury investigation, let alone any allegation that he knew that the agents would provide his statements to the grand jury.**

---

[2] Section 1503's catchall provision—providing for punishment of "[w]however . . . corruptly . . . influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice"—is the only provision of § 1503 conceivably at issue here. The government does not argue—nor could it—that the more specific provisions of § 1503 apply.

5

What was true in *Aguilar* is therefore *a fortiori* true in Kenneth's case: The facts contained in the information and plea agreement do not establish that Kenneth violated 18 U.S.C. § 1503.

The applicability of *Aguilar* to cases like Kenneth's is further evidenced by the First Circuit's decision in *United States v. Scungio*, 255 F.3d 11 (1st Cir. 2001). There, Defendant Scungio lied during an interview with two FBI agents concerning an alleged bribery scheme. *Id.* at 13. He pled guilty, like Kenneth, to violating 18 U.S.C. § 1001. *Id.* at 11. At sentencing, the trial court concluded that § 2J1.2 applied via a cross reference because, in the court's estimation, Scungio's conduct amounted to a generic obstruction of justice. *Id.* at 16. On appeal, the First Circuit vacated and remanded for resentencing. *Id.* at 19. In so doing, it stated that a "generic" obstruction violation was not sufficient to justify application of § 2J1.2. *Id.* at 16. Scungio also argued on appeal that his conduct did not establish a violation of 18 U.S.C. § 1503—the very statute that the government argues applies in Kenneth's case. *Id.* at 15. The First Circuit agreed with Scungio. Citing to *Aguilar*, the court observed that a violation of § 1503 had not been established because "the district court did not find that the defendant knew of the grand jury proceeding . . . or, more importantly, that the false statements he provided to the FBI in connection with that proceeding would be provided to the grand jury." *Id.* at 18. Just as in Kenneth's case, moreover, "there [were] no facts" in the relevant documents "from which the district court could have found such specific knowledge on Scungio's part." *Id.* The district court's application of § 2J1.2, therefore, could not be permitted to stand. *Id.* at 19.

*Third*, the government's argument that Kenneth violated § 1503—and that therefore § 2J1.2 is applicable via the § 2B1.1 cross reference—also fails because it relies on a bogus definition of the statutory term "corruptly." The government argues, in a single throwaway sentence, that "corruptly" means simply "consciousness of wrongdoing," and thus § 1503's *mens rea*

6

element is satisfied here. But in support of this crucial, specious assertion the government only cites a single authority—a set of joint *proposed* jury instructions from a case that did not even involve an alleged violation of § 1503. *See* Gov't 11/30/20 Br., ECF No. 128, at 2. Needless to say, the fact that the government and a random defendant were once involved in a completely unrelated case—charging a crime under a completely different statute—in which the two parties agreed on a definition of the word "corruptly" is not even *relevant*, let alone persuasive or binding.

What *is* binding, however, is Sixth Circuit precedent. That court discussed the definition of the word "corruptly" *as it appears in § 1503* in United States v. Monus, 128 F.3d 376 (6th Cir. 1997). First, the court explained that "[i]n order to sustain its burden of proof for a conviction for the crime of corruptly endeavoring to influence, obstruct or impede the due administration of justice, the government must prove three essential elements: (1) that there was a pending judicial proceeding, (2) that the defendant knew this proceeding was pending, and (3) that the defendant then corruptly endeavored to influence, obstruct, or impede the due administration of justice." *Id.* at 387. Regarding that third prong—i.e. the "corruptly" prong—the Sixth Circuit held that satisfaction of that element requires much more than mere generic "consciousness of wrongdoing." Instead, the court held as follows: "We find, as the District Court and other courts that have considered this issue have found, that the statutory language 'corruptly endeavors' alleges fully and unambiguously that defendant knew a grand jury proceeding was pending and intended to obstruct it."[3] *Id.* at 388.

---

[3] In *Monus*, the defendant's conviction was affirmed in part because the indictment explicitly alleged that the defendant "did corruptly endeavor to influence, obstruct, and impede the due administration of justice in a pending federal judicial proceeding, namely a Grand jury proceeding, by shredding and causing to be shredded books, records and other documents." *Id.* at 388. In stark contrast, the operative documents in Kenneth's case—the information and plea agreement—lack any remotely similar *mens rea* language.

Thus, per *Monus*, because there is nothing in the information or plea agreement to support the assertion that Kenneth knew about the grand jury proceedings (and, indeed, Kenneth did not know about the grand jury proceeding), much less that he intended to obstruct them, Kenneth did not act "corruptly" and, accordingly, did not violate § 1503.[4]

For all of these reasons, then, the government's argument that § 2J1.2 is applicable here via the § 2B1.1 cross reference falls flat.[5]

## II. CONCLUSION

Guideline § 2B1.1 alone governs calculation of Kenneth's offense level. The government's arguments otherwise are contrary to law and fact. For the reasons set forth above, as well as those set forth in his November 16, 2020 and December 16, 2020 briefs, Defendant Kenneth Tyson

---

[4] In light of the speciousness of the government's "consciousness of wrongdoing" argument, its attempt to distinguish *United States v. Griego,* 837 F.3d 520 (5th Cir. 2016), and *United States v. Kim,* 95 F. App'x 857 (9th Cir. 2004), solely on the basis that a "consciousness of wrongdoing" definition of "corruptly" applies here rings completely hollow. *See* Gov't 11/30/20 Br., ECF No. 128, at 3-4.

[5] Like its attempts to distinguish *Griego* and *Kim*, *supra* at 8 n.4, the government's attempts to "distinguish" *United States v. Phillips*, No. 1:11-CR-180 (N.D. Ohio), are also meritless. In fact, the government does not really try to distinguish *Phillips*, thereby implicitly conceding that it applies. Rather than trying to distinguish the case, the government simply points out that Judge Lioi ultimately varied upward in that jury-trial case. Gov't 11/30/20 Br. ECF No. 128, at 3. That, of course, has nothing to do with the applicability of § 2J1.2, which Judge Lioi unequivocally held did not apply. Instead, the government's discussion of the variance in *Phillips* is little more than a thinly veiled attempt to circumvent its plea agreement with Kenneth. That document provides that "neither party will recommend *or suggest in any way* that a departure or variance is appropriate, either regarding the sentencing range or regarding the kind of sentence." Plea Agreement ¶ 14 (emphasis added); *see also Id.* at ¶ 17.

The government's attempt to rely on *United States v. Alatrash*, 460 F. App'x 287 (6th Cir. 2012), fares no better. In that case, the trial court ultimately applied § 2X2.1 rather than § 2J1.2. *Id.* at 492. And though the court did initially perform calculations under § 2J1.2 (though it did not apply them to the case), the defendant *never contested* the applicability of § 2J1.2 on appeal and, indeed, "fail[ed] to . . . offer" *any* "alternative [Guidelines] calculation." *Id.*; *see also* Def. 12/16/20 Br., ECF No. 129, at 4 (further discussing inapposite nature of *Alatrash*).

respectfully requests that this Court follow the probation department's lead in applying § 2B1.1 to calculate his offense level, yielding an initial base offense level of 6 and a total adjusted offense level of 4.

        Respectfully submitted,

        /s/ *Chris N. Georgalis*
        Christos N. Georgalis (OH: 0079433)
        Edward Fadel (OH: 0085351)
        **Flannery | Georgalis, LLC**
        1375 E. 9th St., 30th Floor
        Cleveland, OH 44114
        Telephone: (216) 367-2095
        Facsimile: (216) 367-2095
        Email: chris@flannerygeorgalis.com
        Email: efadel@flannerygeorgalis.com

        *Attorneys for Defendant Kenneth Tyson*

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2020, this Defendant's Reply in Support of Applying U.S.S.G. § 2B1.1 was filed via the Court's ECF system. Counsel of record will receive notice of, and be able to access, the filing via the ECF system.

        /s/*Chris Georgalis*
Chris Georgalis

*An Attorney for Defendant Kenneth Tyson*