UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:18CR708 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| KENNETH TYSON, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.:**

The parties dispute the application of the Guidelines to determine Defendant's Base Offense level. The Government argues that § 2J1.2 is the appropriate Guideline. Defendant disagrees and believes the Court should apply § 2B1.1.

The Court agrees with Defendant. Because the conduct set forth in both the Supplemental Information and the Plea Agreement do not establish a violation of 18 U.S.C. § 1503, Guideline § 2J1.2 is inapplicable.

**I. BACKGROUND FACTS**

From June through December 2018, Special Agents of the executive branch[1] of the United States Government investigated Defendant in connection with his position at the Cuyahoga County Land Reutilization Corporation ("Land Bank"). During the same time period,

---

[1] The agencies involved included the United States Department of Housing and Urban Development, Office of Inspector General ("HUD-OIG"), the Office of the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP"), and the Federal Bureau of Investigation ("FBI").

a Federal Grand Jury in the Northern District of Ohio conducted its own investigation into Defendant's activities.

On or about October 10, 2018, Special Agents interviewed Defendant at his home. During this interview, Defendant made two false statements to the Special Agents. First, he denied that M.R.—a former contractor for the Land Bank—personally worked on Defendant's residence. Second, Defendant claimed he paid the plumber who installed the water line at Defendant's residence. Defendant knew these statements were false. In truth, M.R. arranged to have the plumbing work completed at Defendant's residence, which included finding the plumber. Defendant also knew that he paid neither the plumber nor M.R. for the water line installation. Due to Defendant's false statements, Special Agents had to perform additional investigatory work.

For these false statements, Defendant was charged via a Supplemental Information with Making a False, Fictious and Fraudulent Statement, in violation of 18 U.S.C. § 1001(a)(2). (Doc. 117). On April 15, 2020, the parties filed a Notice of Intent to Plead Guilty, as well as a proposed Plea Agreement.[2] (Docs. 118 & 118-1).

In accordance with the Notice, the Court referred the matter to the Probation Department for a Presentence Report. The initial Report recommended the Court use Guideline § 2J1.2 to calculate Defendant's Base Offense level. (Doc. 119). After Defendant's objection, the Probation Department amended their recommendation and advised the Court to use Guideline § 2B1.1. (Doc. 124). The Government and Defendant disagree which Guideline is correct.

---

[2] The Factual Basis and Relevant Conduct described in the Plea Agreement mirrors the factual recitation here, taken from the Supplement Information.

Given their threshold dispute, the parties requested the opportunity to brief the issue for the Court. (Doc. 123). The Court agreed. Thereafter, the parties filed their briefs. (*See* Docs. 126, 127, 128, 129, 130 & 131).

## II. LAW & ANALYSIS

The parties agree that Guideline § 2B1.1 is the proper starting point for a violation of 18 U.S.C. § 1001.[3] Defendant argues the analysis stops there, yielding a base offense level of 6. The Government however, directs the Court's attention to the applicable cross-reference, § 2B1.1(c)(3).

That section reads as follows:

> (c) Cross References
>
> […]
>
> (3) If (A) neither subdivision (1) nor (2) of this subsection applies; (B) the defendant was convicted under a statute proscribing false, fictitious, or fraudulent statements or representations generally (e.g., 18 U.S.C. § 1001…); and (C) *the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two (Offense Conduct), apply that other guideline*.

U.S.S.G. § 2B1.1(c)(3) (emphasis added).

The dispute at hand concerns prong (C) above. According to the Government, § 2J1.2 is that 'other guideline' that specifically covers Defendant's conduct. Section 2J1.2 applies to a litany of statutory violations, including 18 U.S.C. § 1503, Influence or Injuring Officer or Juror Generally. The Government argues Defendant's conduct violated § 1503.

---

[3] Per Appendix A to the Guidelines, the appropriate offense guideline section for a violation of 18 U.S.C. § 1001 can be either § 2B1.1 or § 2J1.2 (in certain circumstances). U.S.S.G. App. A. The parties agree that the circumstances for applying § 2J1.2 through Appendix A are not present.

- 3 -

The Court disagrees. To determine 'the conduct set forth in the count of conviction,' courts in the Sixth Circuit look at the conduct "described in the indictment or stipulated plea agreement." *United States v. Ballard*, 850 F.3d 292, 295 (6th Cir. 2017); *see also United States v. Rebman*, 321 F.3d 540, 544 (6th Cir. 2003) ("the term 'offense of conviction' describes only the precise conduct constituting the crime for which the defendant was convicted, and does not include non-offense relevant conduct"). Accordingly, the Court applies the conduct described in the Supplemental Information and the Plea Agreement to the elements of 18 U.S.C. § 1503 to determine if § 2J1.2 'specifically covers' Defendant's conduct.

Section 1503 criminalizes persons "whoever…corruptly…influence[], obstruct[], or impede[], or endeavor[] to influence, obstruct, or impede, the due administration of justice." 18 U.S.C. § 1503. Thus, the Government must prove three essential elements: 1) that there was a pending judicial proceeding, 2) that the defendant knew this proceeding was pending, and 3) that the defendant then corruptly endeavored to influence, obstruct, or impede the due administration of justice. *United States v. Monus*, 128 F.3d 376, 387 (6th Cir. 1997). 'Corruptly' requires that "one impede the due administration of justice with 'the general intent of knowledge as well as the specific intent of purpose to obstruct." *United States v. Bashaw*, 982 F.2d 168, 170 (6th Cir. 1992). This generally means that "uttering false statements to an investigating agent…who might or might not testify before a grand jury" is insufficient to make out a violation of § 1503. *United States v. Aguilar*, 515 U.S. 593, 600 (1995).

The Court finds that the conduct set forth in the Supplemental Information and Plea Agreement does not establish a violation of 18 U.S.C. § 1503. First, nowhere does it state that Defendant knew of a Grand Jury proceeding. While both the Supplemental Information and Plea Agreement refer to a Grand Jury investigation, there is no allegation Defendant knew this. And

- 4 -

the Government cannot impute this knowledge to Defendant by the agents' presence at Defendant's home.[4] Since Defendant did not know of the pending Grand Jury proceeding at the time of his false statement, he cannot have obstructed the due administration of justice.

Second, even if the Court could impute knowledge of the Grand Jury proceeding to Defendant, there is no allegation that Defendant 'corruptly endeavored' to influence that proceeding. Section 1503 punishes the specific intent of persons intending to obstruct, *Brashaw*, 982 F.2d at 170, not the mere uttering of false statements to agents, *Aguilar*, 515 U.S. at 600. The Government's reliance for the definition of 'corruptly' on a joint jury instruction from a separate case, involving a separate statute, is misplaced. *See United States v. Lee*, 1:15CR445, Doc. 101 (Boyko, J.) (defining 'corruptly' as a consciousness of wrongdoing for purposes of Obstruction of Justice under 18 U.S.C. § 1512(c)(2)). The relevant conduct must reflect Defendant's specific intent. And the conduct described in Defendant's 'count of conviction' does not support the specific intent to obstruct the Grand Jury.

Despite the Government's acknowledgement of the correct standard of review, *see* Doc. 126, PageID: 1312) (citing *Ballard*, 850 F.3d at 295), it impermissibly relies on conduct described outside the Supplemental Information and Plea Agreement. It cites as support the transcript of the Special Agents' interview with Defendant. (Doc. 128, PageID: 1398; Doc. 131).[5] But the Court cannot consider this evidence as it is not contained in either the

---

[4] Moreover, there exists an issue of whether the Special Agents were acting as agents of the Grand Jury or had been summoned by the Grand Jury for their testimony. *See Aguilar*, 515 U.S. at 600. Both the Supplemental Information and Plea Agreement specifically highlight that the Special Agents were agents of executive branch agencies. Besides a contemporaneous Grand Jury investigation, there is no connection between the Special Agents and the Grand Jury proceeding.

[5] Even if the Court could consider this interview, the Special Agents involved do not mention the Grand Jury. While the agents tell Defendant he is a "target" of "this case," they do not specify the 'entity' targeting Defendant. In fact, they represent themselves as agents of HUD. Thus, the interview transcript does not support the claim that Defendant knew of the Grand Jury proceeding.

Supplemental Information or the Plea Agreement.  Simply put, the Government cannot shoehorn the conduct of the conviction to fit a § 1503 violation.

### III. CONCLUSION

As Defendant correctly highlights, not all 18 U.S.C. § 1001 offenses are covered by § 2J1.2.  Appendix A to the Guidelines makes this clear.  And Defendant's case is one such instance.  Accordingly, the Court agrees with Defendant and will use § 2B1.1 to determine Defendant's Base Offense level.

**IT IS SO ORDERED.**

s/ Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**

**Dated: February 1, 2021**